CHARLES F. L'HOMMEDIEU & SONS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5902. Promulgated February 3, 1927.

> INVESTED CAPITAL.—The credit balances of officers' and stockholders' accounts for undrawn salaries, as appearing on the corporation books December 31, 1919, became paid-in capital on January 17, 1920, when the officers and stockholders formally agreed to cancel their claims for such credit balances and to return the same to the corporation in payment for stock to be thereafter issued. Additions to such accounts during the year 1920 were under the same agreement paid in to the corporation for stock on December 22, when stock was issued therefor.

*Charles F. Fuller, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

TRUSSELL: In the audit of the petitioner's income and profits-tax return for the year 1920 the Commissioner, on July 8, 1925, asserted a deficiency in the amount of $2,714.39, resulting from his elimination from invested capital of the amount of $52,967.86, claimed by the petitioner on the basis of the facts hereinafter set forth.

FINDINGS OF FACT.

The petitioner is an Illinois corporation with its principal place of business at Chicago, and, since 1906, has been engaged as a manufacturer and dealer in platers' supplies. All the stock of the corporation from the time of its organization until the present time has been owned by Charles F. L'Hommedieu and his three sons and one daughter. All of these members of the family, except one of the sons who held one share only, were continuously and actively employed in the conduct of the corporation's business and were all on the regular pay roll as officers and employees. The officers, directors, and stockholders of the corporation, being all the same persons and all regularly present at its place of business, it had always been the custom for these persons to discuss the business affairs of the corporation; make decisions pertaining to business matters; and to carry out such determinations in the conduct of the company's business without making any written record thereof. The company ordinarily kept no minutes of directors' meetings, and minutes of the annual meeting of stockholders were of the most informal character. For some years prior to 1920 it had been the practice of the corporation from time to time to make oral agreements for the payment of salaries to its officers and stockholders, and during all of those years the agreed amounts of these salaries were regularly credited to each person entitled thereto on an open account in the books of the corporation. From these open accounts these officers and stockholders drew such sums from time to time as suited their necessities or convenience. Balances carried in these accounts were treated as debts due to such stockholders and officers, and interest was annually paid thereon at 6 per cent per annum up to the close of the calendar year 1919.

On December 31, 1919, the total of the balances in these accounts was $40,673.23. On the same date balance sheets showed capital stock issued $30,000, surplus and undivided profits $53,216.79. On that date all the resources of the company were absorbed in land, buildings, machinery and equipment, inventories and accounts receivable, except $2,685.70 in cash and $3,750 in Liberty bonds. The business of the company had grown from a very modest beginning in the year 1906 until at the end of the year 1919 its total resources aggregated $187,416.88.

During the year 1919 the management of the company became convinced that its plant and equipment were insufficient to accommodate the needs of its growing business. In October, 1919, its managers consulted its bankers concerning the matter of procuring a loan of $20,000 or $30,000 for the purpose of constructing additions to its buildings and installing additional equipment. The

bankers advised the company's officers that with the large amount of the company's indebtedness to its stockholders standing as an obligation the bank would not be willing to make the loan desired. Thereupon, the stockholders conferred among themselves as to the steps which could be taken to get the necessary credit, and, at the date of the annual meeting on January 17, 1920, all of these stockholders reached the final agreement that they would, and they then did, enter into an understanding and agreement that the amounts standing to the credit of each stockholder on account of undrawn salaries as of December 31, 1919, should be then and there paid back to the company, and that each stockholder should thereafter receive, for the amount of his or her respective balance, additional stock representing such balance at such future date as new stock could be issued. They also at the same time agreed that any portions of the 1920 salaries which were undrawn at the time of the issue of such additional stock should be then paid back to the company for additional shares then to be issued. Thereafter, the management of the company assured its bankers that such action had been taken; that the stockholders' credits had been canceled and the amounts thereof paid back to the corporation. On April 3, 1920, the bank made the company a loan of $30,000 to be used for additional buildings and equipment.

On or about October 9, 1920, the corporation made application to the officials of the State of Illinois for authority to increase its capital stock from $30,000 to $150,000. In due course of time such authority was granted, and on December 22, 1920, at a special meeting of the stockholders and officers of the company, it was agreed, and the agreement was then and there carried out, that the company then issue to the stockholders of record as of January 1, 1920, a stock dividend of 176 per cent, aggregating $52,800, and that it also issue to the stockholders and officers whose credit balances had been paid back by virtue of the agreement of January 17, 1920, stock of a par value of $57,200, making a total aggregate stock issue on that date of $110,000. It was then further agreed that such balance as after the issue of this stock remained in the so-called salary credit accounts should be retained as a part of the company's surplus until by future additions such balance should reach the figure of $10,000, when stock should be issued to the parties whose accounts showed such balances and in the total amount of $10,000. This last-mentioned stock was issued sometime during the year 1921.

On December 22, 1920, the salaried officers and stockholders had left undrawn 1920 salaries in an aggregate amount of $23,309.18, $16,526.67 of which was absorbed in the stock issued on that date. Six thousand seven hundred and eighty-two dollars and forty-one

cents remained in an account of cash paid in for stock for which the shares were not then issued.

The amount of $40,673.23, the aggregate of the stockholders' credit balances as of December 31, 1919, became paid-in capital on January 17, 1920. The amount of $23,309.18 of authorized salaries for 1920, but not then withdrawn, became paid-in capital on the 22nd day of December, 1920.

> *The deficiency may be redetermined in accordance with the foregoing findings of fact pursuant to Rule 50, and judgment will be entered in due course.*