PALOMAR LAUNDRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5911.   Promulgated December 9, 1946.

*Raymond M. Wansley, C. P. A.*, for the petitioner.
*II. A. Melville, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge:* Respondent determined a deficiency in declared value excess profits tax for the year 1941 in the amount of $14.88, and a deficiency in excess profits tax for the years 1941 and 1942 in the respective amounts of $587.63 and $2,889.62.   Only the amounts of excess profits tax for the years 1941 and 1942 are in controversy.   The deficiencies are due to several adjustments to petitioner's invested capital for those years.   Petitioner, by appropriate assignments of error, contests only an adjustment of $40,000 for each of these years.   In a statement attached to the deficiency notice for the taxable year ended December 31, 1941, respondent explained this adjustment as follows:

(c) Preferred stock of $40,000.00 par value, issued to brokers as a commission on the sale of your preferred stock, is excluded in the computation of invested capital.

Respondent made the same adjustment to petitioner's invested capital for the taxable year ended December 31, 1942.

This presents the sole issue.

The case was submitted upon a stipulation of facts, which is adopted as our findings of fact.   The facts may be summarized as follows:

Petitioner was incorporated under the laws of the State of California in May 1925.   The returns for the periods here involved were filed with the collector for the sixth district of California.   At the time of its organization petitioner entered into an agreement with a stockbroker whereby the broker agreed to obtain subscriptions for 1,600 shares of petitioner's preferred stock at its par value of $100 per share and deposit the selling price of $160,000 in escrow.   In consideration

for such services the petitioner agreed to issue to the broker as a commission 400 shares of its preferred stock having a par of $40,000.

This agreement was carried out by both parties. However, of the 1,600 shares subscribed, five shares were subsequently canceled, leaving a balance of 1,595 shares actually sold, for which the petitioner received cash in the total amount of $159,500. This $159,500 was the only money or property paid in for the 2,000 shares (1,600 shares sold plus 400 shares issued as a commission to the broker) of preferred stock issued by the petitioner. It is agreed that the fair market value of the 400 shares of the preferred stock issued to the broker was on the date of issuance $100 per share, or a total of $40,000.

The petitioner, in computing its excess profits tax for the years 1941 and 1942, arrived at an excess profits credit on the invested capital method based upon an equity invested capital of $199,500, which was arrived at by adding to the $159,500 cash which it received the $40,000 representing the par value of the 400 shares of preferred stock issued as a commission to the broker. The respondent made the adjustment above set out and excluded the said $40,000 in the computation of petitioner's invested capital.

Petitioner contends that, in determining its equity invested capital under section 718 of the Internal Revenue Code,[1] there should be included the amount of $40,000 which represents the fair market value of 400 shares of preferred stock issued by it to a broker for the sale of 1,600 shares of petitioner's preferred stock at its par value of $100 per share. Petitioner argues that the services rendered by the broker on the sale of this stock constitute "property paid in" for stock within the meaning of the statute and, therefore, the value of the 400 shares of stock issued for such services is includible in its equity invested capital. It maintains that in effect the issuance of the 400 shares of preferred stock to the broker as a commission was equivalent to the payment of $40,000 in cash to the broker and the immediate investment of this amount in its preferred stock.

Respondent contends that the 400 shares of preferred stock which were issued to the broker were not issued for "money paid in" or "property paid in," but for services performed by the broker; that, unless such services may be considered as the statutory equivalent of either "money" or "property," their value can not be considered as equity invested capital under the provisions of section 718 of the

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. * * *

Internal Revenue Code. Respondent relies chiefly on *Simmons Co.*, 8 B. T. A. 631; affd., 33 Fed. (2d) 75. In the *Simmons* case we had occasion to discuss the meaning of invested capital under the provisions of section 326 (a) of the Revenue Act of 1918.[2] For purposes of the question now before us section 326 (a) of the Revenue Act of 1918, with reference to invested capital, is substantially the same as the provisions of 718 (a) of the Internal Revenue Code. In the *Simmons* case we said in part:

> We are certain that under no circumstances can invested capital be *increased* by the amount of a commission which a corporation pays for the sale of its stock to those who thereby become stockholders. Nor can it be increased by the difference between the selling price and par of the stock.
>
> * * * It may be true that the amount paid in commissions is essentially a capital expenditure, but not all capital expenditures are "invested capital." * * *

The First Circuit in affirming the Board, said at page 76:

> We agree with the reasoning of the Board of Tax Appeals by which it reaches the conclusion that invested capital cannot be increased by commissions paid for the sale of its stock or by discount from par to the purchasers of the stock. * * *

In the instant case the brokers sold 1,600 shares of petitioner's preferred stock for $100 per share. Subsequently 5 shares were canceled, leaving 1,595 sold to the public. For these shares petitioner received $159,500 in cash. That, of course, goes into petitioner's invested capital, and as to this amount there is no dispute. When this had been accomplished, petitioner issued to the brokers 400 shares of its preferred stock for their services in marketing the 1,595 shares above referred to. These 400 shares issued to the brokers it has been agreed had a fair market value at the time of issue of $40,000. This amount, as has already been said, petitioner contends should also be added to its equity invested capital. To do this, it seems would be in violation of what we said in the *Simmons* case as follows:

> We are certain that under no circumstances can invested capital be *increased* by the amount of a commission which a corporation pays for the sale of its stock to those who thereby become stockholders. * * *

Cf. *La Belle Iron Works* v. *United States*, 256 U. S. 377. See also *Finance Corporation of New England*, 16 B. T. A. 763.

We think, therefore, that petitioner's equity invested capital can not include the value of the 400 shares of stock issued to the broker as a commission on the sale of petitioner's original stock issue. Cf.

---

[2] SEC. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) :

(1) Actual cash bona fide paid in for stock or shares ;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares * * *

*Blumberg Brothers Co.*, 12 B. T. A. 1021; *James I. Van Keuren*, 28 B. T. A. 480.

Petitioner, in support of its contention, cites *Charles F. L'Hommedieu & Sons Co.*, 6 B. T. A. 41, and *Federal Plate Glass Co.*, 6 B. T. A. 351. We do not think these cases are controlling, as they did not involve facts such as we have here. In *Charles F. L'Hommedieu, supra,* certain stockholders and officers of the corporation agreed that undrawn salaries standing to their credit on the corporate books should be paid back to the company and they should receive therefor shares of stock. Thus the corporate assets were released from the payment of this debt and the capital account was therefore increased. In *Federal Plate Glass Co., supra,* two employees were paid a stated salary and, in addition, a certain amount in cash. It was held that the payments in addition to the salary were capital expenditures and should be included in petitioner's invested capital for profits tax purposes. However, the evidence indicated that these men performed services in the redesigning of the company's plant facilities and supervised the purchase and installation of much of the plant's equipment, similar to services rendered by designing engineers or architects, and the results of such services were reflected in its capital assets. The respondent is sustained.

*Decision will be entered under Rule 50.*