AMERICAN BUSINESS CREDIT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9906.   Promulgated December 16, 1947.

*Edward K. Hanlon, Esq.*, for the petitioner.
*Martin M. Lore, Esq.*, for the respondent.

1114

OPINION.

VAN FOSSAN, *Judge*: The question at issue can be stated simply. For equity invested capital purposes and under section 718 (a) (1) of the Internal Revenue Code,[1] is the amount paid in by stockholders for their stock the criterion, or is it the net amount of cash made available to the corporation after redeeming its commitment to pay its broker agent certain commissions for making the sale of such stock?

We have examined the history of the origin and use of the term "invested capital" and find that throughout the consideration of invested capital as a measure of allowing credit against the proposed excess profits tax the question has been approached from the viewpoint of the stockholders' cash contribution for stock.

In one of the earlier cases, *LaBelle Iron Works* v. *United States*, 256 U. S. 377, the Supreme Court discussed the term at length and there said:

> In order to adhere to this restricted meaning and avoid exaggerated valuations, the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed or converted in exchange for shares of the capital stock, or actually acquired through the business activities of the corporation or partnership (involving again a conversion) and coming in *ab extra*, by way of increase over the original capital stock. * * *
>
>    \*     \*     \*     \*     \*     \*     \*
>
> It is clear enough that Congress adopted the basis of "invested capital" measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and *bona fide* transactions and by valuations obtaining at the time of acquisition, not only in order to confine the capital, the income from which was to be in part exempted from the burden of this special tax, to something approximately representative of the risks accepted by the investors in embarking their means in the enterprise, but also in order to adopt tests that would enable returns to be more easily checked by examination of records, and make them less liable to inflation than if a more liberal meaning of "capital and surplus" had been adopted; thus avoiding the necessity of employing a special corps of valuation experts to grapple with the many difficult problems that would have ensued had general market values been adopted as the criteria.

The legislative history of the controlling section (718 (a)) and of its predecessors shows clearly that the dominant factor in determining the amount of equity invested capital to be credited to the corporation in computing its excess profits taxes is the sum paid in, contributed or "risked" by the stockholders for their stock.

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

  (a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—

  (1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

   ♦     ♦     ♦     ♦     ♦     ♦     ♦

The phraseology employed in the several statutes is substantially the same. In the Revenue Acts of March 3, and October 3, 1917 (sections 202 and 209, respectively) the words used are "actual cash paid in".; in the Revenue Acts of 1918 and 1921 they are "actual cash bona fide paid in"; while in the Internal Revenue Code (section 718 (a)) they are "money previously paid in for stock."

In an early Bureau interpretation, in I. C. B. 281 (Apr.–Dec., 1919), the Advisory Tax Board, in T. B. R. 40, stated:

> The opinion of the Advisory Tax Board has been asked as to whether commissions paid by a corporation for the sale of its capital stock are to be deducted in computing invested capital. Upon this question section 326 (a) states that invested capital means (1) "Actual cash bona fide paid in for stock or shares." * * * These words signify the actual cash paid in to the corporation or to its duly authorized agents by the shareholders. * * *

and appended the following headnote:

> Reasonable commissions or other forms of compensation lawfully paid by a corporation for the sale of its capital stock not to be deducted in computing invested capital.

In discussing the bill which was incorporated in the Revenue Act of 1940 and Internal Revenue Code, section 718 (a), it was manifestly the understanding of Congress that one basis of equity invested capital is the price the stockholder pays for his stock (Hearings on H. R. 10,413, Senate Committee on Finance, 76th Cong., 3d sess., p. 198; Congressional Record, 76th Cong., 3d sess., p. 12,251; Joint Hearings on H. R. 10,413, 76th Cong., 3d sess., p. 149).

When the phrase "invested capital" is used, it is logical to impute an investment by someone who "previously paid in [money] for stock," and that person can be only the stockholder. Such is the natural and normal interpretation of the phrase.

In the case at bar the stockholders acquiring the petitioner's stock paid the scheduled amounts for their stock to the petitioner through its agent, Hodson. The petitioner agreed to pay Hodson, as compensation for its services in selling the stock, $1.25 per share, which Hodson should deduct from the amounts paid for stock by the stockholders. This is a common procedure, as the Supreme Court recognized in *Helvering* v. *Union Pacific Railroad Co.*, 293 U. S. 282, when it stated:

> But even if the commissions, unlike discount, may, as the Government insists, be regarded as a contemporary expense of procuring capital, it is one properly chargeable to capital account. In practice it is taken out of the proceeds of the bonds by the banker.

The delivery of the stock to the new stockholders was to be made by the petitioner through its agent on the fourth business day following the receipt of the order therefor by the petitioner. Hodson thus acted as a distributing agent for the petitioner, as well as its selling

agent, and deducted its commission when the stock was paid for by the purchaser.

The stockholder purchasing the shares of petitioner's stock sold under the three agreements paid the scheduled price for his stock which he then received in exchange therefor. Although the payment of such commissions is an established custom in effecting stock sales, the shareholder knew only what amount of money he had invested in the enterprise. He had no means of knowing the terms of the sale or brokerage contract.

We think it clear that the question before us is to be approached and answered from the viewpoint of the stockholder, i. e., "money previously paid in for stock." So approached, the conclusion is obvious that the full amount which the stockholder paid for his stock is to be included in equity invested capital, as contemplated by the statute. The stockholder paid one sum, viz., the purchase price of the stock.

The respondent's principal argument is that the petitioner has attempted to *increase* its equity invested capital by the amount of the commissions. He expresses his position as follows:

* * * Respondent is not attempting to *reduce* the equity invested capital by excluding commissions which are already part of such capital, but is denying that the commissions contested could have been included in equity invested capital *in the first instance.* Respondent also urges that the effect of petitioner's position is to *increase* equity invested capital by including commissions which under the decisions may not be done.

\* \* \* \* \* \* \*

Respondent concludes that commissions are not within the express terms of Section 718 (a), nor are they "money paid in for stock" or its equivalent. Commissions cannot add to the *available capital* of a corporation as they belong to the agent and not to the corporation. Therefore, commissions cannot be *included* in equity invested capital. If they were included they would *increase* invested capital in violation of the statute and the decisions.

The respondent thus contends that the *net* amount of capital derived from the sale of stock and made "available" to it is the proper sum to be included in equity invested capital. He views the commission as a distinct and separate sum of money paid by the stockholder to Hodson as compensation for the procurement of the stock for the stockholder. We find nothing to support this theory. The transaction with the purchasing stockholder was very simple. He paid his money to the petitioner's broker agent for the stock and in due time received it. He was not a party to the arrangement between the petitioner and Hodson for the use and disposition of the amount so paid by him.

In his brief, the respondent himself says:

* * * While it might be true that the buyers of stock did not know they were paying for an agent's commission when they made their purchases from the agent, it is, nevertheless, true that only the net amount of the sale price was ever received by petitioner; only this amount was available as capital and actually only this amount was ever "embarked" in the venture. * * *

We can not follow the reasoning by which the respondent seeks to sustain his action. He cites and relies largely on *Simmons Co.* v. *Commissioner*, 33 Fed. (2d) 75, affirming 8 B. T. A. 631; certiorari denied, 280 U. S. 588. Singularly enough, petitioner also relies on the *Simmons* case. As we read that case, it is in accord with our conclusion above expressed.

In *Magee Furnace Co.*, 11 B. T. A. 1216, we said:

The only issue remaining to be considered is whether or not the respondent erred in excluding from invested capital an item of $42,000, which the petitioner alleges represents commissions paid to the bankers upon the sale of its first preferred stock. Substantially the same question was before the Board in *Simmons Co.*, 8 B. T. A. 631, and we there discussed fully the underlying principles. Following the reasoning of the *Simmons* case, we hold that respondent was in error in reducing invested capital by the amount paid out in commissions. The entire amount received in payment for stock properly went into invested capital. The fact that the commissions were immediately paid out would not, of itself, reduce invested capital.

The Commissioner acquiesced in the above decision VIII–1 C. B. 28. See also *Finance Corporation of New England*, 16 B. T. A. 763.

Our conclusion is entirely consistent with the holding of this Court in the recent case of *Palomar Laundry*, 7 T. C. 1300. In that case the broker sold 1,600 shares of preferred stock at $100 per share. Subsequently 5 shares were canceled, leaving 1,595 shares sold to the public. For these shares the corporation received $159,500 in cash. We observed as to this sum "that, of course, goes into petitioner's invested capital, and as to this amount there is no dispute." The dispute arose over 400 shares subsequently issued to the broker for its services in marketing the 1,595 shares. It was agreed the 400 shares had a fair market value of $40,000. This amount the corporation contended should also be added to its equity invested capital, arguing that the services rendered constituted "property paid in" for stock within the meaning of this statute. Respondent argued that the 400 shares of preferred stock were not issued to the broker "for money paid in" or "property paid in," as required by the governing statute. Relying chiefly on the *Simmons* case, we held that the corporation's equity invested capital would not include the value of the 400 shares issued to the broker. The above statement of the facts and the contentions in the *Palomar* case are sufficient to point the distinction between it and the case at bar. Obviously, the 400 shares of stock constituted neither money nor property paid in to the corporation and, therefore, such stock did not come within the intendment of the statute.

No question was raised by the parties or argued by counsel as to the relationship of such commissions to accumulated earnings and profits as of the beginning of the taxable year, and we therefore omit any discussion of that phase of the question.

We hold that, under section 718 (a) (1), the petitioner's equity

# 1120

invested capital in the taxable years resulting from money previously paid in for stock should not be reduced by the amount of commissions paid for the sale of such stock.

Reviewed by the Court.

*Decision will be entered under Rule 50.*