Fulton Iron Works Company v. Commissioner.
Fulton Iron Works Co. v. Commissioner
Docket No. 13077.
United States Tax Court
1948 Tax Ct. Memo LEXIS 267; 7 T.C.M. (CCH) 22; T.C.M. (RIA) 48004; January 23, 1948
*267 Davis Haskin, Esq., 1705 Olive St., St. Louis, Mo., for the petitioner. George E. Gibson, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $73,706.32 and $47,924.29 in excess profits taxes for the taxable years ended June 30 in 1942 and 1943. The questions for decisions are: (1) What was the fair market value of the common stock of the petitioner on May 15, 1917? (2) What is the equity invested capital of the petitioner with regard to the shares of stock issued by it on May 15, 1917? Findings of Fact The petitioner, a Delaware corporation, is engaged in the manufacture of machinery. It filed its returns with the collector of internal revenue for the first district of Missouri. Fulton Iron Works, hereinafter referred to as the old corporation, had outstanding 7,500 shares of common stock of a par value of $100 per share on March 19, 1917. Smith, Moore & Co., hereinafter called Smith, and Mark C. Steinberg & Company, hereinafter called Steinberg, two St. Louis stock brokerage firms, on or about March 19, 1917, acquired a 60-day option to purchase at $200 per share the 3,887 shares of the *268 old corporation stock owned by John F. O'Neil. Smith had a two-thirds interest and Steinberg a one-third interest in the option. The two firms then undertook to formulate a plan for the formation of a new corporation and for the transfer of the assets of the old corporation to it. A depository agreement was executed by O'Neil on April 26, 1917, and by May 10, 1917, it had been signed by all the stockholders of the old corporation and all of the stock of that corporation had been deposited thereunder. The depository agreement constituted J. Herndon Smith, Mark C. Steinberg, and Lawrence O'Neil a committee with authority to organize a corporation for the purpose of acquiring the assets of the old corporation. Pertinent parts of that agreement were as follows: "2 - It is agreed that the stock of said new company shall be disposed of in the following manner, to wit: "(a) The said Committee is authorized to sell 10,000 shares of preferred stock and 10,000 shares of common stock to bankers, for the sum of $950,000.00 in cash, and the members of the Committee are authorized to participate in such sale and become purchasers of said stock or any part thereof. "(b) There shall be assigned *269 30,000 shares of common stock to the Fulton Iron Works in part payment for its assets, which are to be acquired by said company. "3 - It is understood that when said new company is organized it is to acquire from the said Fulton Iron Works all of the real estate, machinery, materials, patents, good will and all of the assets of every description whatsoever, including cash, of said Fulton Iron Works, and that the new company will assume all of the obligations and liabilities of said Fulton Iron Works of every description whatsoever. It is further understood that the consideration to be paid to the Fulton Iron Works by said new company for the property aforesaid, shall be $750,000.00 in cash, and 30,000 shares of the common stock of said new company. "4 - It is understood and agreed that proper corporate action shall be taken by the stockholders of said Fulton Iron Works, providing for the distribution of its assets among its stockholders and the liquidation of said company immediately upon the payment of said sum of $750,000.00 in cash and delivery of said 30,000 shares of stock as herein provided." The petitioner was organized on May 11, 1917 with an authorized capital stock *270 of 20,000 shares of $100 par value preferred stock and 40,000 shares of common stock without par value. The stockholders of the old corporation adopted a resolution on May 11, 1917 which was in part as follows: "NOW, THEREFORE, RESOLVED, "1 - That all the assets and business of this Company be sold to said Fulton Iron Works Company for the consideration of $750,000 cash and 30,000 shares of the common stock of said Company, upon condition that said Company assume all of the debts and obligations of this Company." A similar resolution was adopted on that date by the board of directors of the old corporation. The first meeting of the board of directors of the petitioner was held on May 14, 1917. The following resolutions were adopted by the board at that meeting: "RESOLVED, That the officers of this Company be, and they are hereby, authorized to accept the proposition of Messrs. Smith, Moore & Co., and Messrs. Mark C. Steinberg & Company, to sell to said parties 10,000 shares of the preferred stock and 10,000 shares of the common stock for the sum of $950,000 cash. "WHEREAS, It is the interest of this Company to purchase the business and assets of the Fulton Iron Works, *271 a Missouri corporation, "NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS: "1 - That the President of this Company be, and he is hereby authorized for and in behalf of the Company, to enter into a contract with the Fulton Iron Works, a Missouri corporation (whose name has been changed to the Fulton Machine Company), which contract shall be substantially in the form this day presented by the President to this Board, pertaining to the acquisition of property from said Fulton Iron Works and other matters. "2 - That the President of this Company be, and he is hereby authorized to acquire the business and assets of said Fulton Iron Works, and to pay for same the sum of $750,000 cash and 30,000 shares of the common stock of this Company, which shares the proper officers are hereby authorized to issue and deliver. "3 - That the total number of shares of stock of this Company now to be issued shall be 10,000 shares of preferred stock and 40,000 shares of common stock, and the remaining 10,000 shares of authorized preferred shall be issued only when and as authorized by the Certificate of Inspection and By-Laws of this Company; that the Certificates for the stock now to be issued, to-wit: *272 10,000 shares of preferred and 40,000 shares of common stock, shall be countersigned by the Transfer Agent." A contract, dated May 15, 1917, in accordance with the resolutions above set forth, was entered into between the petitioner and the old corporation. It provided in part as follows: "First - The Grantor does hereby agree to sell * * * all of its property * * * and all of its assets * * *. "Second - The consideration for the property aforesaid is $750,000.00 cash and 30,000 shares of common stock of the Grantee, which cash and certificates for which stock have been this day paid and delivered to the St. LouisUnion Trust Company by the Grantee for the account of the Grantor and which payment and delivery the Grantor acknowledges to be in accordance with the agreement of the parties hereto and in satisfaction hereof." That contract was duly performed by the parties. Smith and Steinberg paid $950,000 to the petitioner on May 15, 1917, and, in accordance with the terms of the depository agreement, 10,000 shares of preferred stock and 10,000 shares of common stock of the petitioner were issued to Smith on behalf of Smith and Steinberg. Smith and Steinberg exercised their *273 option to purchase the stock of the old corporation from O'Neil prior to the formation of the petitioner, and by reason thereof and in accordance with the terms of the plan, certificates for 15,548 shares of the petitioner's common stock were issued to them on May 15, 1917. Smith made sixty preferential sales of the common stock of the petitioner, totaling 13,260 shares, on May 14, 1917, in lots ranging from 10 shares to 4,000 shares at $35.00 per share. It made one such sale of 50 shares at that price on May 15, 1917. Those shares were sold at that price to minority shareholders of the old corporation to induce them to join in the depository agreement, to relatives and intimate friends of Smith and Steinberg, to key employees of the old corporation to induce them to remain with the petitioner, to a few men thought to be capable of supplying the petitioner with good management, and to friends of those men, for the purpose of inducing those men to become officers and directors of the petitioner. Smith sold 3,470 shares of the common stock of the petitioner in 19 sales on the open market. Those sales were made between May 16, 1917 and May 23, 1917, in lots ranging from 5 shares to *274 1,000 shares, and at prices ranging from $44.75 to $45.75 per share. The great majority of those shares was sold at $45 per share. Four sales of common stock were made on May 31, 1917 at prices slightly in excess of $50.00 per share. That stock subsequently sold as high as $72.00 a share. The petitioner reported its equity invested capital in its returns for the taxable years in question in part as follows: Property paid in for common stock
(40,000 shares at $45.00 per
share)
$1,800,000.00
Money paid in for preferred stock
950,000.00
The Commissioner, in determining the deficiency, computed the equity invested capital for each of the years involved in part as follows: 5/15/17 Money paid in for 10,000
shares of preferred and
10,000 shares of common
stock
$ 950,000.00
5/15/17 Property paid in for stock
(30,000 shares at $35.00
per share)
1,050,000.00 He gave the following explanation for his determination: "Cash in the amount of $750,000.00 paid for the property of Fulton Iron Works has been eliminated from invested capital in accordance with the provisions of Section 718 of the Internal Revenue Code." The fair *275 market value of the common stock of the petitioner on May 15, 1917 was $45.00 per share. $950,000 was paid in for 10,000 shares of preferred and 10,000 shares of common stock of the petitioner on May 15, 1917 and property was paid in for 30,000 shares of its common stock on that date. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner contends that the value of its common stock on May 15, 1917 was $45 per share and the respondent contends that it was $35 per share. The Commissioner bases his contention on the sales of the petitioner's stock that took place on May 14 and 15, 1917. His only argument is as follows: "It is respondent's contention that these sales, made simultaneously with the issuance of the common stock, clearly fix its fair market value 'at the time of its issuance,' as $35.00 a share, the value determined by the Commissioner." The petitioner argues that the sales relied on by the respondent are not good evidence of fair market value because they were made at an "inside price" pursuant to prior arrangements. The petitioner argues correctly. The sales were preferential. The sellers were not trying to obtain *276 the best price they could for the stock. They were interested in inducing minority shareholders to join in the depository agreement, in inducing key employees of the old corporation to work for the petitioner, and in inducing certain men to assume the management of the petitioner by selling them and their friends the stock in question as bargain prices. The circumstances involved in those sales were so exceptional as to deprive them of their evidentiary worth. Cf. Premier Packing Co., 12 B.T.A. 637. The sales made between May 16 and 24, 1917, chiefly at $45 per share, and relied on by the petitioner as supporting its valuation, were made on an open market and at arm's length. There were no exceptional circumstances involved in those sales which deprive them of their evidentiary worth and they are the best evidence in this case of the fair market value of the stock on May 15, 1917. Estate of Leonard B. McKitterick, 42 B.T.A. 130; Augustus E. Staley, 41 B.T.A. 752; John J. Newberry, 39 B.T.A. 1123; Andrews v. Commissioner, 38 Fed. (2d) 55. The second issue for decision is the correct computation of the petitioner's *277 equity invested capital for the taxable years in question. The definition of equity invested capital is set forth in section 718 of the Internal Revenue Code which is in part as follows: "(a) Definition. - The equity invested capital * * * shall be the sum of the following amounts * * * "(1) Money Paid In. - Money previously paid in for stock * * *; "(2) Property Paid In. - Property (other than money) previously paid in * * * for stock * * *. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." The parties agree that the petitioner's "basis (unadjusted) for determining loss upon sale or exchange" of the assets of the old corporation was cost and that the cost of the property acquired by the issuance of the stock of the new corporation is the fair market value of that stock at the time of its issuance. Regulations 112, Section 35.718-1. Thus, the problem presented by the statute and the facts of this case is to determine how much money and how much property was paid in for the petitioner's stock on May 15, 1917. The solution of that problem depends upon how many shares of the petitioner's *278 stock were issued for money and how many were issued for property. The petitioner contends that it issued 40,000 common shares and 10,000 preferred shares for property, the fair market value of the common stock was $45 per share, the fair market value of the preferred stock was $101 per share, and the aggregate fair market value of those shares in the amount of $2,810,000 should be included in the computation of equity invested capital. It maintains that Smith and Steinberg had such control over the entire transaction that the petitioner could not have acquired the assets of the petitioner unless it allowed them and no one else to receive 10,000 shares of common and 10,000 shares of preferred stock for $950,000. It argues that the substance of the transaction looked at as a whole was the issuance of 40,000 shares of common stock and 10,000 shares of preferred stock, the payment of $750,000 in cash and the assumption of the debts of the old corporation (the cash payment and the assumption of debts not being factors for invested capital purposes) for the assets of the old corporation and $950,000. The respondent contends that 10,000 shares of preferred and 10,000 shares of common *279 stock were issued for $950,000 and 30,000 common shares were issued for the property of the old corporation just as all of the documents provided. He applied his valuation of $35 per share of common to the foregoing and arrived at $1,050,000 as the amount of property paid in for the 30,000 common shares. He added that to the $950,000 in money which he contends was paid in for the 10,000 shares of preferred and 10,000 shares of common and arrived at a total of $2,000,000 which he included in his computation of the petitioner's equity invested capital. The record supports the respondent's contention (except of course as to his valuation of the common stock which has been found to have been $45 per share). The depository agreement, the resolutions of the stockholders and directors of the old corporation and of the directors of the petitioner, and the contract entered into pursuant to those resolutions, all clearly and expressly set forth that the petitioner was to pay the old corporation $750,000 in cash and 30,000 shares of common stock in consideration for its assets. The parties have stipulated that the contract was duly performed. The depositiory agreement and the aforementioned *280 resolutions also clearly and expressly set forth that the petitioner was to sell 10,000 shares of preferred stock and 10,000 shares of common stock to bankers, i.e., Smith and Steinberg, for the sum of $950,000 in cash. The parties have stipulated that Smith and Steinberg paid $950,000 to the petitioner on May 15, 1917, and that 10,000 shares of preferred stock and 10,000 shares of common stock were issued to Smith on behalf of Smith and Steinberg. The intentions of the parties were clearly set out in writing and executed with precision. The conclusion which the petitioner seeks would have to be inferred from the whole record as there is no direct evidence to support it. The value which has been found for the common stock would indicate that the brokers obtained the 10,000 shares of preferred and 10,000 shares of common at a bargain price and that the net value of the property of the old corporation was in excess of the amount which the petitioner paid for it. The petitioner argues that those things happened because the brokers were in control. They argue that the Commissioner's determination exalts form and sacrifices substance. This record, however, does not justify a decision *281 in the petitioner's favor on this point. The parties several times expressed their intention in writing and they carried out their written agreements precisely. The 10,000 shares of common and the 10,000 shares of preferred that went to the brokers were not issued for property but were turned over to the brokers solely for cash. Even if those shares were turned over to them for some services, which the record does not show, no additional amount could be included in equity invested capital. Palomar Laundry, 7 T.C. 1300. Cf. American Business Credit Corp., 9 T.C. 1111, (Dec. 16, 1947). It is unnecessary to determine the fair market value of the preferred stock in view of the conclusion that no property was paid in for that class of stock. Decision will be entered under Rule 50.