OPINION. Leech, Judge: The first question presented is whether petitioner realized a taxable gain by the purchase and retirement of certain of its bonds at less than face value in the years 1940, 1941, and Í942. A determination of this issue as to 1940, pertinent in arriving at the net income for 1940, is material only for the purpose of computing the excess profits credit carry-over. Petitioner contends that the situation is controlled by Helvering v. American Dental Co., 318 U. S. 322, and there was a gratuitous forgiveness of indebtedness of both principal and interest. The respondent argues that the facts presented require the application of the rationale of United States v. Kirby Lumber Co., 284 U. S. 1. The record satisfactorily establishes that during the period involved the bonds of petitioner were actively traded in as unlisted securities in over-the-counter transactions at various quoted prices. Purchases and sales in which petitioner was not involved numerically exceeded those in which petitioner engaged. All of such trading and dealing in such securities was at arm’s length and based on quoted prices. Where willing buyers and willing sellers freely trade in a given security, we think there exists an “open market.” Where there exists an “open market” establishing market value, a situation is presented where the principle of forgiveness has no proper application. In such circumstances, we regard it as immaterial whether the securities are acquired at less than face value in a transaction direct with the creditor, or through agents. In the recent case of Commissioner v. Jacobson, 164 Fed. (2d) 594; certiorari granted (Apr. 5, 1948), relied upon by petitioner, it is stated: “As the Tax Court found, none of these bonds were listed or had a quoted price and nobody was buying them except the taxpayer * * The situation disclosed by this record requires us to hold that the instant case is controlled by United States v. Kirby Lumber Co., supra. Cf. Edmont Hotel Co., 10 T. C. 260. There remains to be considered how the amount of realized gain on the principal of the bonds is to be determined. Each bond which petitioner purchased had attached coupons of the face value of $180. representing back interest for the prior years of 1938, 1934, and 1935. Such coupons were required to.be attached to the bonds to constitute proper delivery. When petitioner purchased a bond or bonds it issued a check for one amount, to cover the principal, the 18 per cent accrued interest, and the current interest. Petitioner made no allocation or breakdown between principal and the 18 per cent back interest. Since it was the obligation of petitioner to pay both the principal of the bonds and the 18 per cent interest, the respondent contends that the amount paid should be appropriately allocated. He suggests two methods: (1) The application of the amounts paid, first to interest and the remainder to principal, or (2) the allocation of the total amount to principal and to the 18 per cent interest on a proportionate basis. The respondent argues that the latter method is the more equitable. We hold that the latter method is proper. The rule that, where an amount is paid as an unallocated unit on a debt and interest thereon, such amount should first be applied to the interest due and the balance to the principal debt, has no application where the entire debt, including the interest, is being liquidated by such unit payment. Since the basic figures are not in dispute and the allocation is purely mathematical, the appropriate amounts can readily be determined in a computation under Eule 50. We have found as a fact that petitioner received no tax benefit in the years 1933, 1934, and 1935, when it accrued on its books and claimed as a deduction the interest represented by the 18 per cent coupons attached to the bonds purchased during the period involved. Eespondent concedes that, to the extent petitioner received no tax benefit from the interest deductions in the tax years 1932 to 1935, inclusive, the portion of the gain attributable to back interest should not be included in petitioner’s taxable income for the taxable years involved. We do not agree with the contention of petitioner that if we determine, as we have, that the purchase price is to be allocated between principal and the 18 per cent interest, that portion allocated to interest constitutes a proper deduction in the respective years the bonds were purchased. The basis for our conclusion will be discussed in connection with the next issue, which also involves a claimed deduction for interest paid. The second issue presented is whether petitioner is entitled to deduct from gross income the amount of $709,380, as interest paid on its bonds in the taxable year 1942. This item of interest represents the 18 per cent interest coupons attached to petitioner’s bonds still outstanding in 1942. The pertinent facts underlying this issue may be briefly summarized. Petitioner’s bonds and the accrued 18 per cent interest coupons matured on April 1,1944. Petitioner, realizing it would be unable to meet the maturity date, began negotiations for a seven-year extension until April 1951. Such an agreement was consummated with the then bondholders on December 10, 1942, upon condition that petitioner make immediate payment of the deferred interest. On December 10, 1942, petitioner paid such interest, totaling $709,380. Petitioner now contends that it is entitled to an interest deduction in 1942, the year of payment. Petitioner used the accrual system of accounting and concedes that its interest must be deducted when it accrues. Petitioner argues, however, that the supplemental indenture under which the 18 per cent interest coupons were substituted for the original coupons attached to the bonds which required the payment of interest semiannually on April 1 and October 1 in the years 1933, 1934, and 1935 extended the liability to pay the interest, so that the amounts of interest accrued on its books in those years were items which were properly deductible for income tax purposes in 1942 when paid. The argument, we think, is without substance. The supplemental indenture did not postpone or alter the unconditional liability to pay such interest. It merely extended the time for payment. All the events occurred which fixed the amount and determined the liability for the interest, and under petitioner’s accrual system of accounting the right to deduct the amounts of interest became absolute in the years when accrued, notwithstanding actual payment was not made until a later date. Such rule is firmly established. United States v. Anderson, 269 U. S. 422; American National Co. v. United States, 274 U. S. 99; Cumberland Glass Mfg. Co. v. United States, 44 Fed. (2d) 455. The fact that petitioner in such years had other deductions, so that it would receive no tax benefit from the amounts of interest accrued in those years, is not controlling. We conclude that petitioner is not entitled to deduct the sum of $709,380 as interest paid in the taxable year 1942. The third issue raises the question whether certain amounts accrued by petitioner as Pennsylvania corporate loans taxes represent additional interest on borrowed capital. During the years 1940,1941, and 1942, petitioner accrued and subsequently paid on behalf of those bondholders residing in Pennsylvania the respective amounts of $9,108.58, $9,015.50, and $8,490.77 representing Pennsylvania corporate loans taxes. The respondent disallowed as a deduction 50 per cent of such amounts in computing petitioner’s excess profits net income for each of those years, pursuant to section 711 (a) (2) (B) of the Internal Revenue Code.[1] It is the respondent’s position that these payments constitute interest on borrowed capital. Petitioner contends the payments are deductible, payments of tax or business expense, and that it is entitled to deductions of the entire amounts paid. It is stipulated that the Pennsylvania corporate loans taxes here involved were imposed against the individual bondholders.[2] In order to make its bonds more attractive to Pennsylvania investors, petitioner’s bonds provided that the 6 per cent interest shall be paid “without deduction for any taxes, assessments or other governmental charges payable to the Commonwealth of Pennsylvania, * * * but not in any calendar year in excess of four (4) mills upon each dollar of the face value of such bonds.” Petitioner treated these payments on its books as tax payments and so claimed deductions as payments of Pennsylvania corporate loans taxes. It is well settled that taxes are deductible only by persons against whom they are imposed.. Pacific Southwest Realty Co., 45 B. T. A. 426; affd., 128 Fed. (2d) 815; certiorari denied, 317 U. S. 663. The voluntary assumption of the tax liability of another does not, under that rule, render the contested item deductible as a payment of tax or as a business expense. National Piano Mfg. Co. v. Burnet, 50 Fed. (2d) 310; Robinson v. Commissioner, 53 Fed. (2d) 810. We think the payments by petitioner of the Pennsylvania loans tax in the years involved constituted, in effect, additional interest to its bondholders resident in Pennsylvania. The respondent’s allowance of only 50 per cent of the amounts paid, pursuant to section 711 (a) (2) (B) of the code, is sustained. The fourth issue presents the question whether the respective amounts of $236,250 and $235,613.79 should be included in petitioner’s equity invested capital for the taxable years involved. The amount of $235,613.79 represents the allocated portion of the fair market value of 18,980 shares of petitioner’s no par value common stock, having a fair market value of $40 per share, which petitioner issued to the bankers as commissions for the sale of its preferred stock. Petitioner admits that the case of Palomar Laundry, 7 T. C. 1300, supports the respondent’s disallowance of the amount of $235,613.79 as equity invested capital. The facts in the instant case are indistinguishable from those in the cited case and, on the authority of Palomar Laundry, supra, we sustain respondent. The amount of $236,250, which is also in issue, represents the difference between the price at which the bankers received the first preferred stock from the petitioner and the price at which the bankers sold the stock to the public. Petitioner relies on American Business Credit Corporation, 9 T. C. 1111. The material facts on which our decision in the American Business Credit Corporation case was premised are clearly distinguishable from the facts here. In the instant case, the record establishes quite plainly that the bankers purchased for their own account a specified number of shares of petitioner’s first preferred stock at $90 per share. The agreement between petitioner and the bankers provides that petitioner “shall sell to Bankers and Bankers shall purchase from Company Twenty-three thousand two hundred twenty-three (23,223) shares of said first preferred stock at $90.00 per share * * *. Bankers may sell said stock at any price they may fix; but if in their discretion they sell said stock to the public at a price in excess of $98.00 per share * * * then the Bankers will divide any excess over the sales prices mentioned per share, and accrued dividend, equally with the Company.” Petitioner contends that this latter provision to divide the excess constitutes the bankers the agents of petitioner. We do not agree with this construction of the agreement. The contingency under which there was to be a division of the excess price received on a resale to the public was for the purpose of limiting the profit of the bankers. It does not change the character of the agreement as one of purchase and sale between the bankers and petitioner. In American Business Credit Corporation, supra, the broker was the mere agent of the taxpayer. We, therefore, determined that the gross proceeds received from the stockholders were to be properly included in the taxpayer’s equity invested capital. It should be noted, however, that in the last cited case the facts show that, mter alia, the agreements also provided for the sale by the taxpayer and the purchase by the broker of three blocks of 20,000 shares each of common stock at the respective prices of $5, $5.50 and $6 per share, and a reoffering by the brokers of such shares to the public at an additional price of $1.25 per share. In its equity invested capital the taxpayer included only the sum of $830,000, representing the net amount received from the broker for the 60,000 shares sold to the broker. The respondent made no adjustment with respect to such amount. No issue was therefore presented as to the inclusion of the additional $1.25 per share in taxpayer’s equity invested capital. In the instant case the bankers were not agents for petitioner, taxpayer, in the purchase of the stock. They were themselves the purchasers of the stock. They bought at a discount from par, and the profit realized on a resale to the public is not to be included in petitioner’s equity invested capital. Cleveland Graphite Bronze Co., 10 T. C. 974. We sustain the respondent on this issue. The fifth issue presents the question whether in computing excess profits net income the respective amounts of $4,514.61, $3,674.92, and $10,788.27, representing unamortized debt discount and expense originally incurred in 1929, applicable to the first mortgage bonds retired in 1940,1941, and 1942, are deductible.[3] When a corporation purchases any of its bonds at a price less than the issuing price, as in the instant case, the net gain or income therefrom is the difference between the purchase price and the face value minus any amount of discount not yet deducted. Expense incident to the issuance of bonds is, of course, in the same category for present purposes as the discount. This is apparently conceded. The income thus determined is to be included in gross income for normal tax purposes. Treasury Regulations 111, sec. 29.22 (a)-17 (3) (a). In determining excess profits net income, the basis for which is normal tax income,[4] income from retirement or discharge of bonds outstanding for more than 18 months, later amended to six months,[5] is to be excluded under section 711 (a) (2) (E). The amount to be so excluded in determining excess profits net income is the same amount which is included in gross income for the purposes of determining normal tax net income. Since the amount of unamortized discount is reflected in determining the net gain or income by reducing that figure for normal tax purposes, no further adjustment is necessary or proper in computing excess profits jnet income. The correct amount of gain or income realized by petitioner upon the retirement of its bonds in the respective years involved, determined under the method of allocation hereinabove adopted as proper, is includible in petitioner’s gross income for the purpose of arriving at normal tax net income, and such amount is to be excluded in computing petitioner’s excess profits net income. Certain other facts and figures have been stipulated, some of which are dependent upon our determination of the issues presented. In the computation under Rule 50, all stipulated facts will be considered and appropriately applied. Decision will be entered under Rule 50. SEC. 711. EXCESS PROFITS NET INCOME. (a) Taxable Years Beginning After December 31, 1939. — The excess profits net income for any taxable year beginning after December 81, 1939, shall be the normal-tax net Income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made: ****** * (2) Excess profits credit computed under invested capital credit. — If the excess profits credit is computed under section 714, the adjustments shall be as follows: ******* (B) Interest. — The deduction for interest shall be reduced by an amount equal to 50 per centum of so much of said interest as represents interest on the indebtedness included in the daily amounts of borrowed capital (determined under section 719 (a)). Pennsylvania Corporate Tax Law, ict of June 22, 1935, Public Law 414. In computing normal tax net income, petitioner included in grosB income the gross gain realized on the retirement of its bonds issued at less than par. It then took as a deduction the unamortized debt discount. In computing excess profits net income, petitioner deducted the gross amount of gain realized on the retirement of its bonds issued at a discount from normal tax net income. See Sec. 711 (b), I. R. C. In the taxable years 1940 and 1941, section 711 (a) (2) (E) required the obligations to be outstanding more than “eighteen months.” The section was amended by section 207 (d) of the Revenue Act of 1942 by inserting “6 months" in lieu of “eighteen months.” The amendment was made effective for the taxable years beginning after the year 1941.