Graton & Knight Company v. Commissioner.
Graton & Knight Co. v. Commissioner
Docket No. 15193.
United States Tax Court
1949 Tax Ct. Memo LEXIS 104; 8 T.C.M. (CCH) 743; T.C.M. (RIA) 49206; August 22, 1949
*104 Timothy D. Sullivan, Esq., for the petitioner. Paul P. Lipton, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency in excess profits tax for 1941 in the amount of $95,566.82. The parties have settled some of their differences and submit for decision only a question of equity invested capital. It is whether the Commissioner erred in excluding from "money previously paid in for stock" under section 718 (a) (1), I.R.C., $250,000 paid to the National City Company in connection with the sale of 7 per cent cumulative preferred stock in November 1919. The facts have been stipulated or are evidenced by exhibits. [The Facts] The petitioner filed its excess profits tax return for 1941 with the collector of internal revenue for the district of Massachusetts. A predecessor of the petitioner desired to issue $5,000,000 par value of 7 per cent cumulative preferred stock in the latter part of 1919 in order to retire some other stock and bonds. It entered into a contract early in November 1919 with The National City Company. The contract was in part as follows: "The Company intends to issue, *105 at this time, $5,000,000 par value, of the new preferred stock, which will be offered to the holders of its outstanding common stock for subscription pro rata, according to their present stock holdings, for cash at par and accumulated dividends, if any. As we desire that the disposition on or before November 13, 1919, of this entire $5,000,000, par value, of new preferred stock proposed presently to be issued should be assured, we hereby request you to organize a Syndicate (of which you will be the Manager) to underwrite, at par and accrued dividends, this offering to our common stockholders and to take up at that price and on November 13, 1919 (or as soon thereafter as the temporary certificates or receipts shall be ready for delivery) such of the said preferred stock as shall not be subscribed by the common stockholders prior to that date. We agree to defray all legal and advertising expenses of the Syndicate and to pay all expenses incurred by us in connection with the authorization of the stock and the preparation, issue, delivery and exchange of temporary and definitive stock certificates, including the amount of any State or Federal stamp taxes thereon. "In consideration of *106 your organizing and acting as Manager of such Syndicate, which will underwrite the said offering and take up the preferred stock aforesaid, we hereby agree to pay you, as compensation, the difference between the legal and advertising expenses of the Syndicate and the sum of $250,000." The common stockholders subscribed for 1102 shares of the new preferred and paid for it in full. The remaining 48,898 shares were "taken up and paid for by the syndicate organized by" National City on or before November 17, 1919. The shares were advertised for sale by National City and others at par prior to November 13, 1919. Certificates for 48,104 shares were issued on November 17, 1919 in the name of Walter B. Seabury, an employee and nominee of National City, and certificates for 794 shares were issued to 42 other persons. The shares in the name of Seabury were reduced to 3,816 by the end of 1919 and to 35 by the end of 1920. Thereafter, for several years, from 10 to 35 shares stood in his name. The predecessor "paid $250,000 to the syndicate in accordance with its contract." The petitioner computed its excess profits tax credit for the calendar year 1941 on the invested capital basis. It *107 included the issue of 7 per cent cumulative preferred stock in equity invested capital at $5,000,000. The respondent, in his computation, determined that the net amount received by Graton & Knight in connection with the issuance of the preferred stock was $4,750,000, representing the difference between par value and the $250,000 paid as "commissions" to the syndicate, and that the amount includible in equity invested capital in respect of the issue of preferred stock was limited to $4,750,000. The Commissioner contends that the $250,000 was a discount to the syndicate which thus purchased a large part of the shares by paying in for them $250,000 less than their par value. He relies upon The Cleveland Graphite Bronze Company, 10 T.C. 974, in which there was no evidence that the shares were all sold to the public. [Opinion] The petitioner relies upon American Business Credit Corporation, 9 T.C. 1111, in which it was held that the amount paid in for stock was not reduced by a commission paid to a broker for acting as agent for the issuing corporation in selling the stock. An extremely important fact in a case like this is the amount paid in or risked *108 by the one who purchased the stock from the issuing corporation. If a commission is paid by the latter to an agent for selling the stock at par to third parties, then the amount paid in by the purchasers is not reduced by the commission. American Business Credit Corporation, supra.But if the stock is actually sold at a discount, only the amount actually paid in is to be included in the computation of equity invested capital, even though the discount is called a commission. Warner Company, 11 T.C. 419; The Cleveland Graphite Bronze Company, supra. The Commissioner casts aside too lightly the fact that the $250,000 was to be paid, not to the syndicate, but to National City for organizing, managing and paying expenses of the syndicate. Yet the evidence does not show to what extent a syndicate was actually organized, who purchased the stock, the amount paid in for it, that National City was not the actual original stockholder which purchased the larger part of the issue, or that the $250,000 was not in substance a discount to National City, the purchaser of a large block of the stock, although given another name. Cf. Emerson Electric Manufacturing Co., 3 B.T.A. 932; *109 James I. Van Keuren, 28 B.T.A. 480; Corning Glass Works, 9 B.T.A. 771, affirmed on this point 37 Fed. (2d) 798, certiorari denied 281 U.S. 742. This record does not show that The Cleveland Graphite Bronze Company case supra, does not govern or justify any change in the Commissioner's action on this point. Decision will be entered under Rule 50.