OPINION. ARundell, Judge: The sole question presented herein concerns the amount petitioner may include in computing its equity invested capital under section 718 (a) of the Internal Revenue Code[1] as representing the value of the property and assets of a business, including good will, which was acquired by the petitioner in 1925. Petitioner views the transaction whereby it acquired Foster’s business as one involving a purchase of the business by Otis & Co. from Foster and a subsequent exchange of the business property by Otis to the petitioner for the petitioner’s capital stock. Basing its arguments on this interpretation of the transaction, petitioner contends that the issue is resolved to one of fair market value, either of the petitioner’s stock issued in exchange for the property, or of the property at the time of its acquisition. (See section 718 (a) (2), supra, and Regulations 112, section 35.718-1.[2]) The respondent, on the other hand, held in the notice of deficiency that the maximum amount includible in the petitioner’s equity invested capital for the property acquired is $4,358,705.70, and he claims that any amount in excess of this sum should be disallowed as representing brokerage commissions realized by Otis on the resale of the petitioner’s stock. A careful reading of the contract between Foster and Otis & Co., the terms of which we have set forth at some length in our findings, leads us to the conclusion that what was envisioned was a transaction between three parties, Foster, Otis & Co., and a newly organized corporation which later became known as the Gabriel Co., the petitioner herein. Foster was to sell his business to petitioner for $4,000,000, plus the amount of Federal income tax he would be required to pay covering his profit on the sale, which tax turned out to be $358,705.70, thus making the total sum to be received by Foster in cash $4,358,705.70. In addition, 1,000 shares of petitioner’s class B voting stock were to go to the four executives who were members of the Foster organization. Petitioner was to acquire the money with which to pay Foster by the sale of its class A stock which, under the terms of the contract, was to be sold to the public on terms dictated by Foster in his contract with Otis & Co. Otis & Co. was to underwrite the transaction and and was to retain for itself by way of a commission the difference between what was paid to Foster for his business and what the stock was sold for to the public. The transaction was a single one and must be viewed as a whole. West Texas Refining & Development Co. v. Commissioner, 68 Fed. (2d) 77; Halliburton v. Commissioner, 78 Fed. (2d) 265; Bassick v. Commissioner, 85 Fed. (2d) 8. The transaction was carried out as planned. From the sale of its class A stock petitioner never received any money as such, but the proceeds of the sale were used to pay Foster, and petitioner received by direct conveyance from Foster the latter’s business. While petitioner’s class A stock alone was sold, to the public for $4,950,000, Otis & Co., pursuant to the agreement of the parties, retained all over the amount necessary to pay Foster. The law is now well settled that where a broker purchases stock at a discount for resale on its own account rather than acting as an agent of the issuing company in marketing securities, only the amount received by the corporation from the broker is includible in its equity invested capital regardless of the price ultimately secured for the stock by the broker upon resale to the public. Simmons Co., 8 B. T. A. 631; affd., 33 Fed. (2d) 75; certiorari denied, 280 U. S. 588; American Business Credit Corporation, 9 T. C. 1111, 1118; Cleveland Graphite Bronze Co., 10 T. C. 974, 986, 987; Warner Co., 11 T. C. 419, 434; cf. Palomar Laundry, 7 T. C. 1300. The _ nature of the transaction between Foster and Otis & Co. is carefully spelled out in the contract of April 20, 1925. The stock of the new company was to be sold to the public at $25 per share and no more. The management of the new company was to be in the executives of the old Foster organization, who were to receive 1,000 shares of class B stock, which constituted 50 per cent of the voting stock of the new company. The underwriting commissions of Otis & Co. were fixed and limited by Foster. Unless each and every term of the contract was followed, Foster reserved the right to cancel the contract. This transaction was in no sense an outright sale of Foster’s business to Otis & Co. but, on the contrary, Otis & Co. was simply the underwriter, purchasing and reselling petitioner’s stock on its own account and not as the petitioner’s agent. It follows from what we have stated that the petitioner is entitled to include in its equity invested capital the amount of $4,358,705.70, representing cash paid by Otis on behalf of the petitioner in securing Foster’s business and assets and, in addition, the sum of $25,000 which we have determined to be the fair market value of the 1,000 shares of class B stock which were transferred to the four Foster executives. In view of the interpretation which we have placed upon the transaction in question and our treatment of the issue, we think it is unnec-cessary to consider in this opinion the petitioner’s proposals that the assets acquired should be valued under the principles set out in Regulations 112, section 35.718-1, supra, or A. R. M. 34, 2 C. B. 31. Decision will he entered under Rude 50. SEC. 718. EQUITY INVESTED CAPITAL. (a) Definition. — The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)— (1) Money paid in. — Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital; (2) Property paid in. — Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. Sec. 35.718-1 Determination of Daily Equity Invested Capital — Money and Property Paid in. — * * * If the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance. If the stock had no established market value at the time of the exchange, the fair market value of the assets of the company at that time should be determined and the liabilities deducted. The resulting net worth will be deemed to represent the total value of the outstanding stock. In determining net worth for the purpose of fixing the fair market value of the stock at the time of the exchange, the property paid in for such stock shall be included in the assets at its fair market value at that time.