JAMES I. VAN KEUREN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49507. Promulgated June 20, 1933.

*Dean G. Acheson, Esq.,* and *William Merrick Parker, Esq.,* for the petitioner.

*James H. Yeatman, Esq.,* for the respondent.

## OPINION.

TRAMMELL: The petitioner contends that the amount of $31,163.42 expended by the Delaware corporation as commissions, salaries, advertising, stationery, rent, telegraph, and telephone in the sale of its capital stock in 1919, 1920, and 1921 constituted a deductible loss in determining the corporation's net income for 1925, the year in which it surrendered its corporate franchise and was dissolved. The respondent contends that, since the amount was expended by the corporation in connection with the procurement of capital through the sale of stock, it constituted a capital expenditure which served to reduce the capital available from the sale of the stock and therefore does not constitute an allowable deduction in determining net income.

In his petition and in his brief the petitioner refers to the expenditures in controversy as " organization " expenses. While they were referred to as such by both parties at the hearing, the respondent in his brief denies that they were such. In his brief the petitioner places his argument on the assumption that the expenditures were organization expenses.

If the expenditures were in fact organization expenses they were of the nature and character of capital expenditures which we have held to be deductible under the loss provisions of the statute in the year in which the corporation surrendered its charter and was dissolved. *Malta Temple Assn.*, 16 B.T.A. 409. The expenditures in this case, however, were in connection with a stock sales campaign.

None of them can be identified as having been incurred in connection with the acquisition of the corporate franchise. The corporation had been fully organized and the sales of the stock here involved and expenditures in connection therewith could not in any sense be said to be in connection with the acquisition of a capital asset. The only asset acquired was the money received for the stock. The money balances the stock and takes its place in the asset account. There is nothing left to balance the cost of acquiring the money. There is nothing to replace it. Commissions paid for marketing stock simply diminished the net return of the stock issued and essentially they are equivalent to the issuance of stock at a discount. The corporation received that much less from the issuance of the stock. In the case of *Simmons Co.*, 8 B.T.A. 631, we said:

It may be true that the amount paid in commissions is essentially a capital expenditure, but not all expenditures are invested capital. If this is a capital expenditure it is not balanced by the acquisition of a permanent asset of equivalent worth because the balancing asset is the amount of money received for the stock, and it cannot balance anything more than the value of the stock issued for it.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

By the payment of the commission for the sale of its own capital stock a corporation acquires nothing the cost or value of which can be included in its invested capital to offset any reduction in its earned surplus or undivided profits as at the beginning of the year.

This decision of the Board was reviewed by the circuit court of appeals (33 Fed. (2d) 75), and in sustaining the Board the court said:

The petitioner's second contention (illustrated by its claim) that the payment of $150,000.00 as a commission for the sale of the first issue of $2,000,000 of preferred stock is something in the nature of an intangible asset in some way or other associated with the dollars which were expended to secure its stock, seems to us an untenable far fetched notion inconsistent with the plain meaning of the tax statutes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Commissions paid for marketing stock simply diminish the net return from the stock issue. Financially, they are equivalent to an issue of stock at a discount from par; the par value must be carried as a liability without an offsetting, equal, amount of cash or property.

See also *Blumberg Brothers Co.*, 12 B.T.A. 1021.

In the case of *Corning Glass Works*, 9 B.T.A. 771, the petitioner had expended $240,000 in the sale of its preferred stock. Of this amount $234,000 was claimed as a deductible loss in 1923, when the preferred stock was retired. In refusing to allow the claimed deduction we said:

We are of the opinion that respondent did not err in refusing to permit petitioner to take the deductions sought. We are further of the opinion that the $240,000 paid Estabrook and Company is not deductible in any event.

In affirming the Board's decision the Court of Appeals of the District of Columbia (37 Fed. (2d) 798) said:

In the instant case appellant sold to Estabrook and Company preferred stock of the par value of $3,000,000 at a discount of $8.00 per share; so that appellant received, not $3,000,000; but $2,760,000; in other words $92 per share. The effect of this was to reduce by the amount of $240,000 the capital available to the appellant. In other words, it represents a capital expenditure and should be charged against the proceeds of the stock and not be recouped out of operating earnings.

In our opinion the loss claimed here does not come within the provisions of section 234 (a) (4) of the Revenue Act of 1926. That subdivision applies only to losses of property or some kind of an asset, but in this case no asset or property was acquired and hence nothing which would form the subject of a loss within the meaning of the statute.

The petitioner relies upon our decision in the case of *Malta Temple Assn.*, 16 B.T.A. 409. That case, however, related to a loss sustained by a corporation upon dissolution and surrender of its charter, not in connection with expenditures incurred in selling stock, but expenditures in connection with incorporation. The petitioner here is not claiming a loss for what it cost to incorporate, but what it cost to acquire capital, a different matter. It may fairly be said that money expended to form a corporation results in the acquisition of an asset, namely, the corporate franchise, which may be considered as a balancing asset, but money paid out to acquire capital does not result in the acquisition of any asset other than the capital itself. There is thus a clear distinction between the *Malta Temple* case and the case at bar.

In his petition as amended the petitioner alleges that the respondent erred in determining the net income of the Delaware corporation for 1925 by not allowing as a deduction the amount of $63,298.25 as a loss sustained in that year upon the abandonment and liquidation of its business. At the hearing and in his brief the petitioner refers to the amount as $68,520.77, which is computed by him as being the difference between the amount of the $500,000 par value of common stock outstanding at the time of dissolution on February 9, 1925, and the amount of $431,479.23 representing the amount of the corporation's net assets on that date aside from any value for good will at that time. It is the contention of the petitioner that the $500,000 par value of common stock was issued by the Delaware corporation for property worth at least $500,000, consisting of the business, assets and good will of the Michigan corporation and cash; that at the time of dissolution the Delaware corporation had net assets of a value of only $431,479.23; and that the difference between the two amounts or $68,520.77 was a loss to the corporation, due to the termination of

the corporation's business and the consequent disappearance of its good will.

Conceding for the sake of discussion, but not deciding, that the deficiency in assets of $68,520.77 was due to the disappearance of good will as a result of dissolution of the corporation and the discontinuance of its business as contended by the petitioner, we are unable to find that the amount constituted a loss as determined by the statute.

Section 202 of the Revenue Act of 1926, which is applicable to the year in controversy, provides:

(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivisions (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

Section 204 of the act provides:

(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

 *  *  *  *  *  *  *

(7) If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Section 203 of the act provides:

(h) As used in  *  *  *  sections  *  *  *  204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of  *  *  *  substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred,  *  *  *

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization  *  *  *

Section 202 of the Revenue Act of 1918 provides:

(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

 *  *  *  *  *  *  *

(2) In the case of property acquired on or after that date, [March 1, 1913], the cost thereof;  *  *  *

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any;  *  *  *

On November 17, 1919, the Delaware corporation acquired all of the "property, assets, goodwill and trade name" of the Michigan corporation and issued therefor $250,000 par value of its common capital stock, which at that time appears to have been all of its stock outstanding. Immediately following the acquisition of the property and assets of the Michigan corporation by the Delaware corporation the stockholders in the Michigan corporation were the same as those in the Delaware corporation and were in control of the Delaware corporation. In view of this situation there clearly was a reorganization within the purview of the above quoted provisions of the Revenue Act of 1926 and the Delaware corporation, resulting from such reorganization, was a party to the reorganization. The stockholders in the Delaware corporation having been the same as those in the Michigan corporation, they, immediately after the transfer of the property and assets of the Michigan corporation, remained in control of such property and assets. Consequently, under the provisions of section 204 (a) (7) of the Act of 1926 the basis for the determination of the gain or loss from the sale or other disposition of any of the assets acquired by the Delaware corporation from the Michigan corporation is to be upon the same basis as it would be in the hands of the Michigan corporation, increased in the amount of gain or decreased in the amount of loss recognized to the Michigan corporation upon the transfer under the provisions of the Revenue Act of 1918.

The Michigan corporation was organized in May or June 1919, and the assets and property transferred by it to the Delaware corporation must of necessity have been acquired by it subsequent to March 1, 1913. Under the provisions of section 202 (a) (2) of the Revenue Act of 1918, the basis, therefore, for determining the gain or loss resulting to the Michigan corporation from the transfer of its assets to the Delaware corporation was the cost of such assets to the Michigan corporation. Under the above quoted provisions of section 202 (b) of the same act the $250,000 par value of the common capital stock of the Delaware corporation received by the Michigan corporation for its assets and property is to be treated as the equivalent of cash to the amount of its fair market value, if any, in determining the gain or loss to the Michigan corporation from the transaction.

The petitioner has submitted evidence as to what assets other than good will were transferred by the Michigan corporation. He contends in his brief that the assets so transferred, including good will, were worth $250,000 and that the $250,000 par value of the common capital stock of the Delaware corporation had an actual value equal to par at the time of the transfer. He also contends that $150,000 of the amount involved represented the purchase price of the good

will of the Michigan corporation. Conceding, but not deciding, that the record sustains all these contentions, an element necessary to a determination of the matter in controversy is lacking. The record does not show what the cost was to the Michigan corporation of the property and assets transferred to the Delaware corporation. The evidence shows the amounts at which such assets, aside from good will, were carried on the books of the Michigan corporation, but it does not indicate whether such amounts represented cost or some other basis for carrying the assets. The item of good will was not carried on the books of the Michigan corporation, nor is there anything in the record to indicate what amount, if any, had been expended by the corporation for it. The evidence shows that the Michigan corporation never paid any income tax as a result of the transfer of its assets, and from the evidence before us we are unable to determine whether it realized a profit or sustained a loss on the transaction. Being, therefore, unable to determine whether upon the transfer the Michigan corporation realized a profit or sustained a loss recognizable under the Act of 1918, we must hold that the basis for determining gain or loss to the Delaware corporation on the disposition of property acquired from the Michigan corporation is the cost of such property to the Michigan corporation, without increase or diminution.

Aside from the item of good will the record does not indicate what assets and property acquired from the Michigan corporation in 1919 were still owned by the Delaware corporation at the time of dissolution in 1925. Considering the nature and character of the assets acquired by the Delaware corporation, aside from good will, it is probable that they had very largely been disposed of prior to 1925, with the possible exception of some furniture and fixtures. The petitioner, however, bases his claim for a deduction on the disappearance of the good will resulting from the dissolution of the Delaware corporation and the discontinuance of its business. As indicated above, any loss sustained on the good will by the Delaware corporation would have to be computed on the basis of the cost to the Michigan corporation of such good will. Since we are unable to find from the record that the Michigan corporation had expended anything for any good will that it transferred to the Delaware corporation, we are unable to find that the Delaware corporation sustained any loss within the meaning of the statute upon the disappearance of good will as a result of dissolution in 1925. We, therefore, perceive no error in the respondent's failure to allow the deduction contended for by the petitioner.

In view of our decision with respect to the above issues it becomes unnecessary to consider the remaining issue relating to the carrying forward of a net loss from 1925 to 1926.

*Judgment will be entered for the respondent.*