**TERMINAL CO., Inc., a corporation of the State of Delaware, formerly C. & K., Inc., formerly Yellow Cab Co., Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3456.**

United States District Court
D. Delaware.

March 7, 1969.

---

* Mrs. Jones, although present at the trial, failed to testify as to the reason or reasons she refused to rent to the Harrises.

Aubrey B. Lank, of Theisen, Lank & Kelleher, Wilmington, Del., for plaintiff.

Alexander Greenfeld, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr. and Lawrence J. Ross, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND JUDGMENT ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LATCHUM, District Judge.

Terminal Co., Inc. (taxpayer) filed this action for refund of income taxes, totalling $17,106.08 plus interest, for the years 1960 through 1966, exclusive of 1964. The refund claims are based on the contention that the taxpayer had "abandoned" a capital asset, the good will of a wholly-owned subsidiary taxicab business, in 1963 and was therefore entitled to a deduction from ordinary income under Section 165(a) of the Internal Revenue Code of 1954. 26 U.S.C. § 165(a). The government, on the other hand, contends that good will was not abandoned but rather that it was transferred by the taxpayer to a third party when that party purchased the taxicab business from the taxpayer and that any incidental loss qualifies only for capital loss treatment under Section 165(f). 26 U.S.C. § 165(f). The government has moved for a partial summary judgment pursuant to Rule 56(b), F.R.C.P., requesting that the court enter an order holding that the taxpayer did not abandon its good will in 1963. Before addressing the rather narrow issue presented for summary decision by this motion, a brief discussion of the relevant transaction is necessary.

In 1957 Yellow Taxi, Inc. was operating both a taxi business and a parking lot business when it changed its name to Terminal Co., Inc. Terminal subsequently organized a wholly-owned subsidiary, Yellow Cab Co., Inc., to which it spun-off the assets of the taxi business. Yellow Cab's major competitor in Wilmington negotiated with the company's two sole stockholders over the period of a year for the purchase of the taxi business and in December, 1962 the negotiations reached agreement. On December 20, 1962 the prospective buyer formed Yellow Cab of Delaware, Inc. and that company entered into a purchase contract on December 27, 1962 with Yellow Cab, Terminal, and the two stock-

holders for the sale of assets, both tangible and intangible, of Yellow Cab for $50,250.00. On that same date, Terminal's sole stockholders, James G. Carr and Harry J. Kelleher, executed a covenant not to compete with Yellow Cab of Delaware in the taxicab business for consideration of $50,000.00, payable to them over 5 years in installments. The sale of Yellow Cab's assets to Yellow Cab of Delaware was consummated on January 10, 1963, and the next day Yellow Cab changed its name to C. & K. Co., Inc. Finally, on December 28, 1964, C. & K. Co., Inc. merged into Terminal.

On its 1963 income tax return, C. & K. Co., Inc. (formerly Yellow Cab Co., Inc.) reported a loss of $15,923.76 on the sale of assets of its taxicab operation and a net operating loss of $31,614.54. An application for a tentative loss carry-back adjustment for the years 1960, 1961 and 1962 was filed on December 30, 1964. Net operating loss deductions were also taken for the years 1965 and 1966. In 1967 the net operating loss deductions and the tentative loss carry-back adjustment for the above-mentioned years were disallowed by the Internal Revenue Service and assessments were made against the taxpayer for the years 1960 through 1966, excluding 1964. These assessments were paid and the taxpayer subsequently filed refund claims with the IRS District Director for Delaware. The claims were almost entirely disallowed and consequently suit was filed in this court. The taxpayer's "claims for refund of each of the years in question are based almost in their entirety upon the transaction which occurred on January 10, 1963, in the sale of the assets of Yellow Cab Co., Inc. to Yellow Cab of Delaware, Inc." [1]

■■ This court is now asked to rule summarily that there was not an abandonment of good will in connection with the sale of the taxi business in 1963 and that when the tangible assets of Yellow Cab were sold to Yellow Cab of Delaware, good will passed to the buyer as a matter of law. Any ruling on the issue of abandonment must not be construed as determinative of the existence of good will,[2] of its value, of gain or loss,[3] or of the dispute between the parties over the true character of the covenant not to compete and the payments made by the buyer to the seller's stockholders pursuant to that agreement.[4] The issue to be decided at this time as a matter of law is a very narrow, and perhaps seemingly academic, one but it is crucial to the question of whether the loss, if one indeed occurred, was ordinary or capital in nature.[5]

1. Complaint at 7.

2. Both parties appear to consider Yellow Cab's good will to have been comprised of (1) a Pennsylvania Railroad station franchise purchased for $15,300.00, (2) good will of the Checker Cab Company valued at $2,750.00, and (3) the "Yellow Cab" name and telephone number purchased for $31,850.00. See Plaintiff's Answer to Defendant's Interrogatory 26; Brief for Defendant at 6. However, on its 1963 income tax return Yellow Cab's successor company listed (2) and (3) as "good will" separate from (1) on the list of assets sold to Yellow Cab of Delaware. Thus, the composition of the good will in this case, though probably not in dispute, is not entirely clear.

3. The defendant's answer alleges that, contrary to plaintiff's loss deductions, "[w]hen the good will items are removed from the Section 1231 [26 U.S.C. § 1231] computation" and "[w]hen Section 1245 of the Internal Revenue Code [26 U.S.C. § 1245] is applied to plaintiff's computation, the plaintiff shows a profit for 1963."

4. By its answer the defendant takes issue with the asserted character of the document. Defendant contends that the amount of $50,000 received under the covenant by the two stockholders "is includible in the [corporation's] proceeds of the sale of January 10, 1963" and not simply attributable to the covenantors as ordinary income.

5. Good will is considered a capital asset under 26 U.S.C. § 1221. See, e.g., Commissioner of Internal Revenue v. Killian, 314 F.2d 852, 855 (C.A.5, 1963). When losses are incurred in the sale or exchange of capital assets, they are deductible by a corporation only to the extent of capital gains. 26 U.S.C. §§ 165(f), 1211(a). A capital loss cannot be carried back to years preceding the

■ Good will is generally recognized to be the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices.

Story, Partnerships § 99, quoted in Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U.S. 436, 446, 13 S.Ct. 944, 948, 37 L.Ed. 799 (1893); Masquelette's Estate v. Commissioner of Internal Revenue, 239 F.2d 322, 325–326 (C.A. 5, 1956). "It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently." Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U.S. at 446, 13 S.Ct. at 948. "When a business is disposed of its value and realized selling price may be enhanced by the existence of good will. If sold at a loss, the loss of good will is reflected in the transaction." Red Wing Malting Co. v. Willcuts, 15 F.2d 626, 633 (C.A. 8, 1926). When one sells or otherwise transfers his business as a going concern he "necessarily parts with all those advantages which are inherent in conducting an established business * * *." Pfleghar Hardware Specialty Co. v. Blair, 30 F.2d 614, 617 (C.A. 2, 1929). "[U]se of the words 'good will' or the equivalent are not necessary in the act of sale if, in fact, what is transferred does give to the purchaser everything which effectively can aid him to step into the shoes of the seller." Strauss v. United States, 199 F. Supp. 845, 848 (W.D.La.1961). If there has been a transfer of a going concern or business from a seller to a buyer then, as a matter of law, there has been a transfer to the buyer of whatever good will existed as an incident to that going concern at the time of sale. *Id.* at 850; *see* Pfleghar Hardware Specialty Co. v. Blair, 30 F.2d 614, 617 (C.A. 2, 1929); Red Wing Malting Co. v. Willcuts, 15 F. 2d 626, 633 (C.A. 8, 1926); *cf.* Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U.S. 436, 446, 13 S.Ct. 944, 37 L.Ed. 799 (1893); Parmelee Transp. Co. v. United States, 351 F.2d 619, 627, 173 Ct.Cl. 139 (1965); Metropolitan Laundry Co. v. United States, 100 F.Supp. 803, 806 (N.D.Cal.1951). In such a situation, the good will is not "abandoned" for the purposes of federal income tax allowances. Thus, this court need now only determine whether there exists in this case on the basis of the record established to this point, any "genuine issue" as to the transfer of *a going concern or business* by the sale of Yellow Cab's assets to Yellow Cab of Delaware. F.R. Civ.P. 56(c).

■ Having before me the complaint and exhibits incorporated therein, the affidavits supplied by the taxpayer in support of its opposition to the motion for partial summary judgment, and the deposition and answers to defendant's interrogatories of the last surviving stockholder and officer of the taxpayer, I perceive no such genuine issue of material fact. The affidavits of two attorneys who negotiated the purchase agreement indicate that the buyer was primarily interested in obtaining the tangible assets of Yellow Cab. The purchase contract evidences an agreement to buy what clearly appears to be the physical

sale or exchange, but can only be used to reduce capital gains in the year of the sale or exchange and in the five succeeding taxable years. 26 U.S.C. § 1212 (a). On the other hand, abandonment of a capital asset, including good will, justifies ordinary loss treatment for any incidental loss. 26 U.S.C. § 165(a); *see, e.g.,* Mine Hill & S. H. R. R. v. Smith, 184 F.2d 422 (C.A.3, 1950); Metropolitan Laundry Co. v. United States, 100 F.Supp. 803 (N.D.Cal.1951); 5 Mertens, Law of Federal Income Taxation § 28.19, at 63–64 (1964); *see generally,* Note, Tax Treatment of Losses Incurred on the Sale or Abandonment of Purchased Goodwill, 62 Yale L.J. 640 (1953).

assets of a taxicab operation and it further provides for the transfer, "at no value," of three categories of intangibles, including "all * * * rights of every nature whatsoever, which Seller * * * has or is entitled to, to operate * * * as a taxicab business in the State of Delaware * * *." Before the sale in 1963, the taxpayer's subsidiary was known as "Yellow Cab," used only yellow taxicabs, and had a telephone number associated with "Yellow Cab." After the sale, the buyer used the name "Yellow Cab," operated only yellow-painted taxicabs, and used the "Yellow Cab" telephone number. On the day after consummation of the sale, the seller changed its name from Yellow Cab Co., Inc. to C. & K. Co., Inc. Prior to the sale, the seller exclusively used the Pennsylvania (now Penn Central) Railroad station cab stand and afterwards the buyer controlled that stand.

It is apparent from the record before the court that the parties essentially agree that the 1963 transaction constituted a sale and transfer of a going concern or business, i. e. the Yellow Cab taxi operation. The taxpayer takes issue only with defendant's view that good will was also sold or otherwise transferred to the buyer as a part of this transaction, asserting that Yellow Cab's good will was merely abandoned. With no apparent factual dispute over the fundamental nature of the transaction as a sale and transfer of a going concern or business, it must be adjudged as a matter of law that the good will of that business, to whatever extent such existed at the time of the transaction, was transferred to the buyer and was not abandoned by the seller.

## JUDGMENT

Since an examination of the record discloses no genuine issue of material fact regarding the nature of the sale of taxpayer's business as the transfer of a going concern or business and since good will, to whatever extent such exists, must pass as an incident to such a transfer as a matter of law, it is ordered and ad-judged that defendant's motion for a partial summary judgment finding taxpayer did not abandon good will should be and is hereby granted.