Sidney **JOFFRE** and Jane Joffre

v.

**UNITED STATES** of America.

Civ. A. No. 14011.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 30, 1971.

Arnall, Golden & Gregory, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

This tax refund case concerns the attempt of plaintiffs to characterize a substantial portion of the purchase price paid for a retail liquor store as the purchase of "goodwill" and to deduct that amount as an ordinary loss in the year the store was allegedly abandoned. The District Director disallowed plaintiffs' deduction claims and assessed them additional taxes and interest which they paid. The court finds that the Director erred and that plaintiffs are entitled to recover the overpayments.

In the late 1940's plaintiff Sidney Joffre ["Joffre"] purchased a retail liquor store located at 135 Mitchell Street, S. W., Atlanta, Georgia. Of the total purchase price of $39,907.47, Joffre allocated $29,942.55 to "goodwill", $9,182.50 to inventory, and the balance to unexpired insurance, fixtures, and leasehold improvements. The $29,942.55 allocated to "goodwill" was carried on the books as such from the time Joffre purchased the store. During the late 1950's and early '60's the profits of the store declined and in December, 1963 Joffre decided to close it. The store was closed June 30, 1964, and the next day Joffre opened a combination beer and liquor store at 846 Memorial Drive, S. E., Atlanta, 2.6 miles from the Mitchell Street store.

On their 1964 tax returns plaintiffs claimed as a deduction an ordinary loss of $29,942.55—the amount carried as "goodwill" on the books of the Mitchell Street store—pursuant to Section 165(a) of the Internal Revenue Code of 1954, and they paid no taxes. The District Director disallowed the deduction and assessed plaintiffs $5,087.41 in taxes and $966.26 in interest, which they paid. On their 1965 returns plaintiffs carried the ordinary loss deduction from 1964 forward and also deducted $364.82 as a business expense incurred in the operation of an automobile which they claimed they used for business purposes 50% of the time. The Director disallowed the carry-forward and the business expense deduction and assessed plaintiffs $1,572.31 in taxes and $405.07 in interest which they paid. Finally, plaintiffs attempted to carry back the ordinary loss deduction to 1961 and filed a claim for refund of $2,186.70 paid in 1961. The Director disallowed the claim and also disallowed plaintiffs' claims for refund of the 1964 and 1965 assessments. Suit was timely brought in this court pursuant to Int.Rev.Code of 1954, § 7422, and jurisdiction is conferred by 28 U.S.C. § 1346 (1970).

■ The first question before the court is whether Joffre properly characterized the $29,942.55 as the purchase of "goodwill." The existence and valuation of goodwill is a factual determination the court must make. Miller v. Commissioner, 333 F.2d 400, 404 (8th Cir. 1964). Goodwill is an intangible asset which has been described as

" * * * the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." J. Story, Partnerships § 99, quoted in Barran v. C. I. R., 334 F.2d 58, 61 (5th Cir. 1964).

Plaintiffs urge that "goodwill" in the retail liquor business means the location of the store. During the late 1940's retail price competition and store advertising in the retail liquor business were forbidden by state and local regulations. Nevertheless, some stores commanded ten times the selling price of others. The selling price was determined, generally, by multiplying the weekly gross sales of the store by ten, and plaintiffs submit that the difference in gross sales, given the nature of the trade and the legal restrictions, was purely a function of the location of the stores. Much of the deposition testimony offered in this case supports plaintiffs' position.

The Mitchell Street store was located near a passenger railroad terminal and attracted a large clientele from the terminal. Over a period of years passenger railroad traffic declined and much of the surrounding area was demolished to allow construction of an expressway. Plaintiffs contend that these factors caused the gross sales of the Mitchell Street store to plummet and since the location had become so poor Joffre had to close the store.

The government, on the other hand, argues that when Joffre bought the Mitchell Street store the $29,942.55 represented a premium payment for the opportunity to enter an essentially monopolized trade. In the late 1940's the number of retail liquor stores was fixed by local ordinance at 154, and it was virtually impossible to open a new liquor store. Instead, the common practice was to buy and sell existing stores. The government contends that this was a monopolistic situation in which goodwill could not exist.

■■ The trouble with the government's argument is that there was a marked difference in the selling price of the retail liquor stores. Given the circumstances of the trade and the legal impediments to attracting customers in the usual ways, the court finds itself in agreement with plaintiffs that the location of the store determined its profitability and accounted, essentially, for the disparity in selling prices. The court also agrees with the government that part of the purchase price represented a premium payment for the opportunity to enter a monopolized trade, but this does not compel the acceptance of the government's conclusion. Rather, these two factors—the location of the Mitchell Street store and the expectancy that the trade would be monopolized to some degree—together constituted a package of intangible assets which, for present purposes, may be referred to as "goodwill." *See* Parmelee Transportation Co. v. United States, 351 F.2d 619, 623–624, 173 Ct.Cl. 139 (1965). This "goodwill" was a capital asset, and if Joffre abandoned it without a sale or exchange, his basis in that asset was deductible as an ordinary loss. Parmelee Transportation Co. v. United States, *supra* at 623; Terminal Co. v. United States, 296 F.Supp. 1084, 1086–1087, fn.5 (D.Del.1969); Zeeman v. United States, 275 F.Supp. 235, 253 (S.D.N.Y.1967), modified on other grounds and remanded for further proceedings, 395 F.2d 861 (2d Cir. 1968); Strauss v.

United States, 199 F.Supp. 845, 850–851 (W.D.La.1961).

■ This raises the next question— whether Joffre abandoned the "goodwill" in the Mitchell Street store so that there was the "closed transaction" which Treas.Reg. § 1.165–1(d) (1960) says is required by Int.Rev.Code of 1954, § 165. Typically, goodwill is part of a going concern and the mere diminution in value of the goodwill is not a "closed transaction." See United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120 (1927). In Beatty v. Commissioner, 46 T.C. 835 (1966), taxpayer claimed an ordinary loss representing the "worthlessness" of a liquor license he had purchased. The type of license Beatty had purchased was at the time freely transferable and commonly bought for investment purposes. Later, however, the Arizona legislature prohibited the transfer of such licenses unless made as part of a bona fide bulk sale. Beatty contended that as a result of this legislation his license became worthless. The Tax Court found that there was no "closed transaction" since Beatty was still operating his tavern and it held for the Commissioner on the ground that the mere diminution in the value of his license did not entitle Beatty to deduct such diminution as an ordinary loss. The government argues that, as in Beatty, Joffre has continued in the retail liquor business and there has been no "closed transaction." The government points out that Joffre brought over an adding machine and some open stock of liquor and wine from the Mitchell Street store to the Memorial Drive store and that he transferred a bank account from the old store to the new one. It says that the transfer of such assets and any "goodwill" that existed in the Mitchell Street store proves that Joffre did not abandon the business and that he is not entitled to an ordinary loss deduction. The court does not agree.

■ As already described, the "goodwill" which Joffre purchased consisted mostly of the location of the Mitchell Street store and partly of the expectation that the monopolistic trade situation would continue. This "goodwill" could attach only to the Mitchell Street store. When Joffre closed that store the "goodwill" asset was abandoned and there was a "closed transaction." See Strauss v. United States, supra 199 F. Supp. at 850–851. The new store which Joffre opened on Memorial Drive was entirely distinct from the Mitchell Street store and it carried over none of the old store's "goodwill." See Metropolitan Laundry Co. v. United States, 100 F.Supp. 803 (N.D.Cal.1951). In that case taxpayer claimed an ordinary loss for the abandonment of his laundry business in San Francisco, although he continued to operate a laundry business across the bay in Oakland. The court held in taxpayer's favor and noted that it was immaterial that he continued a laundry business in Oakland. As in Metropolitan Laundry it is irrelevant here that Joffre continued in the retail liquor trade, and it is also irrelevant that he salvaged an adding machine and some liquor from the old store and used these in the new one. Metropolitan Laundry was cited with approval in Rev.Rul. 57–503, 1952–7 Cum.Bull. 139, in which the Treasury ruled that a taxpayer abandoning purchased goodwill may deduct his basis in the goodwill for the taxable year in which the abandonment occurred. Here, Joffre abandoned the purchased "goodwill" in 1964 and plaintiffs are entitled to the overpayments of taxes and interest together with the overpayments resulting from the Director's disallowance of their carry-back and carry-forward claims.

■ That leaves the issue of plaintiffs' business expense deduction in 1965 incurred in the operation of an automobile. The uncontradicted testimony of Joffre at a hearing before this court tended to show that the automobile in question was used at least 50% of the time for business purposes as plaintiffs claimed on their return. Plaintiffs, therefore, are entitled to recover the overpayment which resulted from the

disallowance of the $364.82 business expense deduction in 1965.

For the foregoing reasons it is ordered and adjudged that plaintiffs shall have judgment over against defendant as follows:

(1) On Count One of the complaint in the amount of $5,087.41 plus $966.-76, together with such interest and costs as are allowed by law;

(2) On Count Two of the complaint in the amount of $1,572.31 plus $405.-07, together with such interest and costs as are allowed by law;

(3) On Count Three of the complaint in the amount of $2,186.70 together with such interest and costs as are allowed by law.

It is so ordered.