**McCRORY CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 775, Docket 80–6243.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1981.

Decided June 12, 1981.

Paul H. Asofsky (Rubin, Baum, Levin, Constant & Friedman, New York City, on the brief), for plaintiff-appellant.

Janis P. Farrell, Asst. U. S. Atty. for the S. D. of N. Y., New York City (John S. Martin, Jr., U. S. Atty., David M. Jones and Michael H. Dolinger, Asst. U. S. Attys., New York City, on the brief), for defendant-appellee.

Before KAUFMAN and TIMBERS, Circuit Judges, and WARD, District Judge.*

ROBERT J. WARD, District Judge:

This appeal presents the narrow question whether for federal income tax purposes an acquiring corporation may deduct the expenses incident to its acquisition of a corporate subsidiary by a tax-free, stock-for-stock exchange pursuant to I.R.C. §§ 361 and 368, in the later tax years during which the acquiring corporation liquidates the subsidiary and disposes of the line or lines of business acquired in the earlier transaction. Reasoning in this case that these expenses were incurred by appellant acquiring corporation in the creation of a new corporate entity comprising the acquiring corporation merged with two acquired subsidiaries, the district court held that the expenses became part of the capital basis of the acquiring corporation and could only be deducted at the time of the surviving corporation's demise. Because we find that the acquiring corporation may have been entitled to deduct some of these expenses at the

time the acquired corporations were liquidated, we reverse and remand for further findings of fact.

## I.

Appellant McCrory Corporation ("McCrory") brought this action in district court seeking a refund of $57,278.70, plus interest, on income taxes alleged to have been improperly assessed and collected for the corporation's tax year that ended January 31, 1966. McCrory maintained that the Internal Revenue Service ("IRS") erroneously disallowed deductions totaling $159,107 for expenses incurred incident to the two transactions in issue here. The dispute was presented to the district court for decision by cross-motions for summary judgment, on the basis of facts stipulated to by the parties.

Each of the two transactions giving rise to this appeal presents the same legal question. Both transactions involved the acquisition by one corporation of the stock of another by statutory merger. In the first transaction, completed on October 31, 1958, Olen Company, Inc. ("Olen"), was acquired by and merged into H. L. Green Company ("Green"), McCrory's predecessor.[1] On December 22, 1960, in the second transaction, National Shirt Shops of Delaware, Inc. ("National"), was acquired by and merged into McCrory. Olen was engaged in the business of operating a chain of retail stores dealing in general merchandise. National operated a chain of stores selling men's furnishings at retail. The IRS determined that both transactions were tax-free mergers pursuant to I.R.C. § 368(a)(1)(A), and as a result the shareholders of Olen and National who exchanged their stock for shares in Green and McCrory, respectively, sustained no gain or loss for federal income tax purposes.[2]

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Green subsequently merged into McCrory on June 20, 1961. The Green-McCrory transaction is not in issue here.

2. Pursuant to I.R.C. § 361(a), 26 U.S.C. § 361(a), "[n]o gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization." "Reorganization" is defined in I.R.C.

At the time it was acquired by Green, Olen was operating its retail business both directly and through the ownership of 123 subsidiary corporations. The subsidiaries acquired by Green from Olen thereafter functioned as Green's Mobile [Alabama] Division. The Mobile Division proved unprofitable, however, and on January 31, 1961, when most of the subsidiaries in the division were insolvent, the Olen subsidiary corporations were liquidated and their assets distributed to Green. By November 1961, each of the subsidiaries had been dissolved and the subsidiaries' corporate charters had been surrendered. McCrory, having succeeded Green in June 1961, then directly operated the retail stores acquired in the Olen merger. The stores were gradually sold off over the course of the next three years. The Olen business was finally discontinued in McCrory's tax year ending January 31, 1965.

Like Olen, National operated its retail outlets both directly and through subsidiary corporations. On January 31, 1964, McCrory sold the operating assets of the National subsidiaries to third parties and in November and December 1964 liquidated the subsidiaries.[3] The corporate charters of all of the National subsidiaries were surrendered between June 1965 and January 1966.[4]

Green initially sought to deduct the $52,843 of expenses incident to its acquisition of Olen in the tax year during which the acquisition was made. The IRS ultimately determined not to allow this deduction on the ground that the expenses were nondeductible capital expenditures that could be deducted only when Green finally abandoned the Olen business. Accordingly, McCrory, as Green's successor, claimed the $52,843 deduction for its tax year ending January 31, 1965, the year in which the Olen business was finally discontinued. Because McCrory had a net operating loss for that tax year, however, it carried this deduction over to the tax year ending January 31, 1966, the year in issue, for which McCrory had a net operating loss carryover.

On its 1960 income tax return, McCrory deducted $146,533 as expenses incident to its merger with National. The IRS allowed $40,269 of this amount to be taken as a current deduction, but required the remaining $106,264 to be capitalized. McCrory then sought to deduct this latter sum in the tax year ending January 31, 1966, during which it had completed divesting itself of the National subsidiaries and their assets. Thus, for the corporation's tax year ending January 31, 1966, McCrory claimed a total deduction of $159,107 for expenses incident to the Green-Olen and McCrory-National transactions. It was the IRS's determination not to allow this deduction that led to this lawsuit.

## II.

The precise question before us, we were somewhat surprised to discover, is one of first impression. The parties have pointed us to no case, and we have found none, addressing the issue raised in this case— whether capitalized expenses incurred in connection with the acquisition of ongoing lines of business by statutory merger can be deducted in the year when the lines of business are sold or abandoned. Strictly

§ 368(a)(1)(A), 26 U.S.C. § 368(a)(1)(A), to include "a statutory merger or consolidation."

**3.** McCrory's liquidation of the National subsidiaries was accomplished under the provisions of I.R.C. § 332, 26 U.S.C. § 332, pursuant to which no gain or loss is "recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation." The facts to which the parties stipulated below do not disclose whether Olen and its subsidiaries also were liquidated, and their assets distributed, in accordance with I.R.C. § 332. Although the question whether any gains or losses were recognized on the liquidation of the Olen corpo-

rations has no bearing on the determination of this appeal, it may be of some concern to the district court on remand.

**4.** The stipulated facts do not reveal what happened to the charter and the assets, if any, of National itself. Presumably National's assets also were sold and its charter surrendered by January 1966. In any event, neither McCrory nor the Government suggests that the precise fate of National is a matter with which we need to concern ourselves, and in view of our decision here we see no reason why this matter should be considered at this time.

speaking, we are not here concerned with capitalized organization or reorganization expenses, or with expenditures incident to the liquidation of a corporation.

■ The question presented divides itself into two sequential lines of inquiry. The first is whether the acquisition expenses at issue here should be viewed as expenditures incident to corporate organizations or reorganizations, or be treated as expenditures incident to the purchase of assets. The Government, calling McCrory's expenditures "merger expenses," contends that the expenses should be treated as organization or reorganization expenditures. In our view, McCrory's acquisition expenses are more properly viewed as analogous to expenses incident to the purchase of an asset and should be treated accordingly. Viewing the matter in this way, we conclude that McCrory may have been entitled to the deduction of some of its acquisition expenses at the time it disposed of the Olen and National assets and lines of business. Having reached this conclusion, it is necessary that we then turn to a second line of inquiry and consider whether all or only part of McCrory's acquisition expenses were deductible. We conclude that, because some of the acquisition expenses were incurred, in effect, in the raising of capital, McCrory was not entitled to deduct all of the expenses incident to the acquisition of Olen and National. After first discussing the legal precedents governing the deductibility of organization, reorganization and merger expenses generally, we turn in the discussion below to a consideration of the two lines of inquiry summarized above.

### A.

■ It is a long-established principle of corporate tax law that a corporation's organizing expenses constitute capital outlays and are not currently deductible.[5] *American Colortype Co.*, 10 B.T.A. 1276, 1285 (1928). Similarly, expenses incurred by a corporation incident to a capital reorganization also are capital expenditures and not currently deductible. *Mills Estate, Inc. v. Commissioner*, 206 F.2d 244, 246 (2d Cir. 1953); *Skenandoa Rayon Corp. v. Commissioner*, 122 F.2d 268 (2d Cir.), *cert. denied*, 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556 (1941). *See also Bilar Tool & Die Corp. v. Commissioner*, 530 F.2d 708, 711–12 (6th Cir. 1976), and 4A J. Mertens, The Law of Federal Income Taxation § 25.35, at 177 (rev. ed. 1979). The requirement that reorganization expenses be capitalized is consistent with the principle that organization costs are capital expenditures. This rule is supported by the judicial reasoning that such reorganization expenditures, like organization expenditures, contribute to the creation of an intangible long-term asset, namely "a change in the corporate structure for the benefit of future operations." *Mills Estate, Inc. v. Commissioner, supra*, 206 F.2d at 246.

■ Moreover, the parties do not dispute the now-settled law that merger and acquisition expenses are not deductible by the surviving, acquiring corporate entity at the time of the transaction. *See generally* B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 5.04, at 5–10 to 5–11 (4th ed. 1979), and 4A J. Mertens, *supra*, § 25.35, at 177. The expenses incident to acquiring a business by purchasing the stock of another corporation are capital expenditures for income tax purposes and must be treated as part of the cost of the asset thereby acquired. *Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); *United States v. Hilton Hotels Corp.*, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). Thus,

---

5. I.R.C. § 248, 26 U.S.C. § 248, however, affords a corporation the option to elect to treat its organization expenditures as deferred expenses and deduct them ratably over the corporation's first five years or longer of business operations. Neither McCrory nor Green sought to avail itself of this provision in connection with the National and Olen acquisi-tions. Presumably this is because McCrory and its predecessor recognized that the expenditures in connection with these transactions were not "organizational expenditures" because they were not directly incident to the *creation* of a corporation. *See* I.R.C. § 248(b)(1) and 26 C.F.R. § 1.248–1(b)(4) (1979).

when an acquired corporation dissolves into and transfers its assets to an acquiring corporation pursuant to a statutory merger, the acquired corporation's organization expenditures may not be deducted in the year of the merger. Rather, as the Fifth Circuit ruled in *Vulcan Materials Co. v. United States*, 446 F.2d 690, 694, *cert. denied*, 404 U.S. 942, 92 S.Ct. 279, 30 L.Ed.2d 255 (1971), "the attributes of corporate life [of the dissolving acquired corporation] are transferred to the surviving corporation and are there continued and preserved." The intangible assets of the acquired corporate entity, created on organization and perhaps by reorganization, continue and inure to the benefit of future operations of the surviving corporation.

█ Organization expenditures, capitalized when incurred, are deductible at the time the corporate entity is dissolved. *Malta Temple Association*, 16 B.T.A. 409 (1928), *acq.*, XIII–2 C.B. 12 (1934). *See also Bryant Heater Co. v. Commissioner*, 231 F.2d 938, 940 (6th Cir. 1956), and *Shellabarger Grain Products Co. v. Commissioner*, 146 F.2d 177, 185 (7th Cir. 1944). This rule is based on the premise that when a corporation is completely dissolved it loses its corporate identity and its privilege of doing business as a corporation. As a result of the corporation's "liquidation and dissolution, it lost or abandoned something for which it had paid and it was entitled to a deduction resulting from the loss." *Koppers Co. v. United States*, 278 F.2d 946, 949 (Ct.Cl.1960).

█ Capitalized reorganization expenditures also may be deducted on dissolution.[6] We see no reason why such expenditures should not be treated the same as capitalized organization expenditures are treated when the taxpayer has made no election pursuant to I.R.C. § 248—at least where the transaction is purely one of reorganization and does not involve the raising of new capital. On the other hand, expenses incident to the issuance of stock, or in the raising of capital in general, are

nondeductible capital outlays. These costs reduce capital inflow and may not be deducted when incurred or upon liquidation and dissolution. *James I. Van Keuren*, 28 B.T.A. 480, 487 (1933). *See also General Bancshares Corp. v. Commissioner*, 326 F.2d 712 (8th Cir.), *cert. denied*, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964) (no deduction for costs incident to issuance of stock dividend); *Pacific Coast Biscuit Co.*, 32 B.T.A. 39 (1935), *acq.*, 1954–1 C.B. 6 (no deduction for costs of retiring stock and issuing new stock); and B. Bittker & J. Eustice, *supra*, ¶ 5.04, at 5–17.

### B.

We turn now to our first inquiry, whether the expenses in issue here should be viewed as expenses incident to corporate reorganization or to the purchase of assets. The Government argues that the Green and McCrory acquisition expenditures are akin to the merger expenses in *Vulcan Materials Co. v. United States*, *supra*, and to the reorganization expenditures at issue in *Mills Estate, Inc. v. Commissioner*, *supra*. As we understand it, the Government's position is that under the rule of *Vulcan Materials* the capitalized acquisition expenses here must be treated as intangible assets of the acquiring corporations that will persist in all successor corporate entities and be of continuing benefit until the last surviving corporation is dissolved. Arguing along similar lines, the Government further urges us to treat these expenses in the same manner as we treated the expenses at issue in *Mills Estate* and consider them to have contributed to an "altered corporate structure," 206 F.2d at 246, that continued in McCrory after the disposition of the earlier-acquired Olen and National lines of business.

We do not believe that *Vulcan Materials* and *Mills Estate* should be read as broadly as the Government suggests. Neither case involved the acquisition and subsequent disposition of subsidiary corporations and asso-

---

**6.** Unlike organization expenditures, a corporation's expenses of effecting a reorganization may not be amortized pursuant to I.R.C. § 248, 26 U.S.C. § 248.

ciated lines of business. In *Vulcan Materials* the capitalized expenses the taxpayer sought to deduct were incurred in connection with a series of mergers that ultimately resulted in the assets of all of the preceding corporate entities becoming part of the surviving Vulcan Materials Company. The case did not involve the later sale, liquidation or other disposition of the corporate subsidiaries or assets earlier acquired in the mergers. In *Mills Estate* we were presented only with the deductibility of expenses incident to an internal capital reorganization and partial liquidation. Again, no sale and subsequent disposition occurred.

In the Green-Olen and McCrory-National transactions the taxpayer and its predecessor purchased the assets and lines of business of the acquired subsidiaries. We agree with McCrory that its acquisition costs should be treated the same as any expenses incurred in the purchase of an asset. As a general rule, expenditures incident to the purchase of an asset must be capitalized by the taxpayer as part of the cost of the asset and either deducted as depreciation expense over the asset's lifetime or carried as a nondepreciable asset to be deducted only at the time the acquired asset is sold or abandoned. Thus, at least in this case, the analogy McCrory suggests is the proper one.

If the transactions here involved only the acquisition and subsequent disposition of the assets and lines of business of Olen and National, all associated acquisition expenses could have been deducted at the time the Olen and National assets and businesses were completely and finally disposed of. In this case, however, because the two acquisitions were mixed transactions involving both the raising of capital and the purchasing of assets, we are presented with the second question adverted to above, whether all or part of McCrory's acquisition expenses were deductible. It is to this second inquiry that we now turn.

## C.

Judge Knapp ruled that "the acquisition expenses were not, strictly speaking, incurred merely to obtain the assets of Olen and National, but rather were incurred in order to achieve the particular legal vehicle (in each instance, a tax-free statutory merger) the parties thought to be desirable." 496 F.Supp. at 1288. The district court held that because Olen and National were acquired by statutory merger, I.R.C. § 368(a)(1)(A), all of the acquisition expenses had to be carried as capital assets of the acquiring corporations and could not be deducted until McCrory's (or its successor's) demise.

The Government and the dissent argue that having elected to acquire Olen and National by tax-free statutory merger taxpayer McCrory "must accept the tax consequences of [its] choice, whether contemplated or not." *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). We of course have no dispute with this proposition. The tax consequences of McCrory's election are what this case is all about. Our problem is with the contention that somehow, because of the tax benefits of acquisitions by statutory merger pursuant to I.R.C. §§ 361(a) and 368(a)(1)(A), McCrory must suffer the burden of losing the ability to deduct any of the expenses incurred incident to the acquisitions. The fault in this argument is that the purported burden does not logically flow from the benefits of an I.R.C. § 361 tax-free exchange. It was the shareholders of Olen and National who benefited from section 361. No matter how McCrory and Green structured the transactions, pursuant to I.R.C. § 1032(a) there would have been no taxable event realized by the acquiring corporations.[7]

We agree that it is critical to a decision here that McCrory and Green chose to ac-

---

7. Under I.R.C. § 1032(a), 26 U.S.C. § 1032(a), "[n]o gain or loss shall be recognized to a corporation on the receipt of money or other property in exchange for stock (including treasury stock) of such corporation." We are

aware, of course, that McCrory and Green did benefit from the tax-free provisions of I.R.C. § 361, 26 U.S.C. § 361, to the extent that these provisions made the exchange-of-stock offer more attractive to the Olen and National share-

quire Olen and National by stock-for-stock exchange rather than by cash purchase. It is not, however, the tax-free aspect of the transaction[8] on which our decision turns. Rather, it is the financing arrangement underlying the exchange that matters.

The problem presented by this case must be viewed in the context of the choices made by McCrory and Green to acquire the companies for stock rather than for cash. The case before us would be an easier one if the companies had been purchased for cash. Accepting as we do the principles enunciated in *Parmelee Transportation Co. v. United States*, 351 F.2d 619, 625–26 (Ct.Cl.1965) (dictum); *Metropolitan Laundry Co. v. United States*, 100 F.Supp. 803, 806–07 (N.D.Cal.1951); and *Massey-Ferguson, Inc.*, 59 T.C. 220, 225 (1972), any expenses incurred by McCrory in acquiring Olen and National for cash could be deducted at the time the acquired corporations were liquidated, if the "clearly identifiable and severable" lines of business of the acquired companies were sold or abandoned.[9] *Id.* If, however, McCrory had issued its own stock to raise the cash it needed to acquire the two companies, the expenses of

obtaining that capital would not have been deductible when incurred or when Olen and National were liquidated. *James I. Van Keuren, supra.*

In the situation presented here, of course, McCrory did not first raise capital and then acquire the Olen and National subsidiaries for cash. Rather, by inducing the shareholders of Olen and National to exchange their stock for shares of Green and McCrory, the taxpayer elected to accomplish the two aspects of each of these transactions— (1) raising capital and (2) purchasing the companies—simultaneously. In effect, Green and McCrory raised the capital to purchase Olen and National from the shareholders of Olen and National themselves, by issuing stock in Green and McCrory. The expenses incurred in connection with the capital-raising aspect of the transaction are not deductible at any time. *See* B. Bittker & J. Eustice, *supra*, ¶ 5.07, at 5–34. Yet the expenses connected with the purchasing aspect of the transaction (*i. e.*, expenses of the type that would have been incurred had the corporations been purchased for cash) were, we hold, deductible at the time the acquired companies were sold or liquidated.[10]

---

holders. In our view, however, this incidental (though possibly significant) benefit should not *ipso facto* give rise to an otherwise illogical and unfair tax consequence.

**8.** *See* note 2 *supra.*

**9.** McCrory apparently sought to deduct these capitalized acquisition expenses from ordinary income as a loss pursuant to I.R.C. § 165, 26 U.S.C. § 165. In refusing to allow the deductions the IRS simply determined that McCrory had failed to establish that it had sustained a "deductible abandonment loss" in the tax years in question. Thus, the IRS did not have occasion to address the question whether the deduction of these expenses, if and when allowed, would reduce ordinary income or reduce capital gains (or increase the capital losses) on the sale of the assets or lines of business acquired earlier. We agree that if, as it appears, the acquisition expenses were not directly allocable to specific assets acquired from Olen and National, but rather were attributable to the Olen and National lines generally, then if on liquidation McCrory sold off the Olen and National assets and abandoned the lines of business it would be entitled to a § 165 abandonment loss. On the other hand, if the lines of business of Olen and National were themselves

sold on liquidation, along with the associated tangible assets, then the deductible acquisition expenses would be applied to reduce capital gains pursuant to I.R.C. § 1011, 26 U.S.C. § 1011. If the transactions involved part abandonment of businesses and separate sale of tangible assets and part sale of lines of business, then an allocation between capital and ordinary deductions may be appropriate. *See generally Parmelee Transportation Co. v. United States, supra*, 351 F.2d at 623–24; *Joffre v. United States*, 331 F.Supp. 1177 (N.D.Ga.1971); Rev.Rul. 57–503, 1957–2 C.B. 139; and 26 C.F.R. §§ 1–165–1, 1–165–2 & 1–167(a)(5) (1980). *See also* Krane, *Deducting Legal and Accounting Fees: Selected Problems*, 44 Taxes—The Tax Magazine 7, 9 & n.13 (1966).

**10.** The dissent may have mischaracterized our holding. We do not, as the dissent suggests, draw a distinction between the purchase of stock and the cash purchase of assets. Rather, our distinction is between the raising of capital (by issuing stock) and the purchase of the stock or assets of another corporation with that capital. Moreover, we do not hold here, as a reading of the dissent might lead one to believe, that costs incident to the raising of capital are deductible when the surviving (capital-raising)

The acquisitions giving rise to the tax questions at issue here do not lend themselves to treatment on the basis of what courts and commentators have called the "dominant aspect" of the transaction. *E. g., Gravois Planing Mill Co. v. Commissioner*, 299 F.2d 199, 208 (8th Cir. 1962). *See also* J. Mertens, *supra*, § 25.35, at 179, and Philipps, *Deductibility of Legal Expenses Incurred in Corporate Stock Redemptions, Partial Liquidations and Separations*, 1976 Duke L.J. 941, 944–48.[11] McCrory and Green sought to acquire the assets and businesses of Olen and National. This obviously was the objective of both transactions. The capital-raising aspects (as we have labeled them) of the Green-Olen and McCrory-National transactions, though perhaps necessary to the principal, dominant aspect of purchasing the subsidiary corporations, unquestionably were secondary in this instance. Thus, were we to follow the "dominant aspect" approach here, we would be constrained to conclude that all of the taxpayer's acquisition expenses were deductible in the years when McCrory completed the disposition of the Olen and National businesses. This would obviously be an untenable result, for then a corporation acquiring a subsidiary by tax-free statutory merger, as here, would receive more favorable tax treatment than a corporation effecting a similar acquisition by cash purchase after first having raised the cash by issuing stock. Such a result would be just as unreasonable as the one urged on us by the Government, a result we rejected earlier in this opinion, under which a corporation acquiring a subsidiary by statutory merger would get no deduction of acquisition expenses whatsoever when it later disposed of the subsidiary.

corporation dissolves. These costs are *never* deductible.

11. The "dominant aspect" approach has not been free from criticism. *See, e. g.*, Note, *The Deductibility of Attorneys' Fees*, 74 Harv.L. Rev. 1409, 1409–11 (1961), and Comment, *Attorneys' Fees for Partial Liquidation: Business Expense or Capital Asset?*, 6 Stan.L.Rev. 368 (1954).

### III.

■ Accordingly, McCrory is entitled to an opportunity on remand to demonstrate that in acquiring Olen and National it incurred expenses associated with the purchase aspect of the transactions that were separate and distinct from those expenses connected with the capital-raising aspect of the acquisitions.[12] Having instituted a refund suit, McCrory bears the burden of proof. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976). If on remand the district court finds that all of the expenses McCrory and Green incurred in acquiring Olen and National were connected with the issuance of stock to Olen and National shareholders, or were common expenses for the capital-raising and purchase aspects of the transaction, then the taxpayer will be entitled to no refund.

We recognize that, as a result of affording this and other corporate taxpayers the opportunity to achieve a deduction of some expenses incident to the acquisition of a subsidiary by merger, the administrative burden on the IRS may be increased somewhat. We also appreciate that the taxpayer may be required to keep more detailed expense records than it may have kept previously, and that a taxpayer failing to keep adequate records will reap no tax benefit from the decision we reach today. In our view, however, these recordkeeping and administrative considerations, which may not be insubstantial, do not warrant our reaching an otherwise inappropriate result and precluding a taxpayer from ever deducting acquisition expenses in an appropriate case.

The judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

12. It is, of course, essential to any refund recovery that McCrory either (i) match those of its acquisition expenses it claims were incurred in connection with the purchase aspect of the transaction with assets and lines of business of Olen and National that were sold or abandoned and completely and finally closed out, or alternatively (ii) demonstrate that *all* of the Olen and National assets and businesses were fully and finally disposed of in the tax years in question.

KAUFMAN, Circuit Judge (dissenting):

I dissent. Admittedly, Judge Ward's attempt to conceptualize Green's purchase of Olen and McCrory's purchase of National as two-step transactions, involving initial exchanges of Green and McCrory stock for cash and subsequent acquisitions of Olen's and National's assets in return for that cash, has superficial appeal. If we follow this approach, as the majority suggests, the costs associated with the purchases of stock are allocable to the intangible "altered corporate structure," *Mills Estate, Inc. v. Commissioner*, 206 F.2d 244, 246 (2d Cir. 1953), and are therefore deductible only upon the surviving corporation's dissolution or liquidation. *Vulcan Materials Co. v. United States*, 446 F.2d 690, 693 (5th Cir.), *cert. denied*, 404 U.S. 942, 92 S.Ct. 279, 30 L.Ed.2d 255 (1971). In contrast, the costs incident to the cash purchases of assets are deductible when the purchasers dispose of them. *E. g., Parmelee Transportation Co. v. United States*, 351 F.2d 619 (Ct.Cl.1965) (dictum); *Massey-Ferguson, Inc. v. Commissioner*, 59 T.C. 220 (1972). An evidentiary hearing is necessary, the majority contends, to enable the district court appropriately to allocate McCrory's acquisition expenses between the two aspects of these transactions.

I am unable to concur in this approach, however, because the taxable events which attach to this hypothetical sequence of transactions distinguish the majority's model from the actual tax-free exchanges that Green and McCrory adopted.

The initial issuance of stock for cash is not a taxable event for the issuing corporation, I.R.C. § 1032(a), or for the purchaser of that stock. But when the issuer then uses that cash to purchase assets in the second step of the hypothetical transaction, the sale is a realization event for the sellers, subjecting them to a capital gains tax. I.R.C. § 1222. Thus, one of the parties to this two-step procedure incurs tax liability.

In contrast, no taxable incidents were realized by either Green or McCrory, the purchasing corporations, or by Olen and National, the sellers of the assets, in the acqui-

sitions involved in this case. The parties chose to characterize these transactions as tax-free reorganizations, pursuant to I.R.C. § 368(a)(1)(A). As a result, Olen's and National's shareholders avoided capital gains liabilities when they disposed of their assets. Moreover, by offering Olen and National this tax-free vehicle, Green and McCrory added an incentive to the deal, and presumably obtained the sellers' assets for a lower price, because the proceeds the sellers received were not taxed. Thus, I cannot agree that the benefits to Green and McCrory were merely "incidental" in nature. *See* note 7 *ante*.

The parties in this case determined at the outset not to incur any initial tax liabilities by characterizing the acquisition as statutory mergers. Having chosen that route, McCrory should be required to treat its acquisition expenses in a manner analogous to the treatment of similar non-deductible costs associated with other forms of tax-free mergers and reorganizations. To recast the underlying acquisitions at this point as a two-step issuance of stock and a realizable purchase and sale of assets for cash would allow the taxpayer to redefine the terms of the transaction for its own tax advantage. I would be inclined to compel McCrory to accept the consequences of its initial choice. *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974).

Accordingly, I see no reason for a remand since there are no facts McCrory could produce which would characterize the acquisition transactions as anything but tax-free statutory mergers. I would affirm Judge Knapp's decision for the Government.